# WHEELING.

## SIMMONS *v.* INSURANCE COMPANY.

### July 23, 1875.

1. Matter in defeasance of the plaintiff's action need not be stated in the declaration ; wherever there is a circumstance, the omission of which is to defeat the plaintiff's right of action, *prima facie* well founded, whether called by the name of a proviso, or a condition subsequent, it must, in its nature, be a matter of defence, and ought to be shown in the pleading, by the opposite party. It is sufficient to state in the declaration those parts of the contract whereof a breach is complained of; or, in other words, to show so much of the terms beneficial to the plaintiff in a contract as constitutes the point for the failure of which he sues ; and it is not necessary or proper to set out in the declaration other parts not qualifying or varying in any respect the material parts above mentioned.

2. But if the defendant's promise or engagement, whether it be verbal or in writing or under seal, embody, or contain, *as part of it, an exception or proviso*, which qualifies his liability ; or in certain instances renders him altogether irresponsible, so that he was not in law *absolutely* bound, the declaration must notice the exception or proviso or there will be a fatal variance; but it is not necessary to negative such exception or proviso by an averment in the declaration. Where, however, the proviso in a written instrument is distinct from and not even referred to by the clause on which the debt is charged, it is considered matter in defeasance, &c., which ought to come from the other side, and then it need not be set forth by the plaintiff. It is also a general rule of pleading that matter which should come more properly from the other side need not be stated.

3. In the declaration on a policy of insurance it is stated as one of the conditions precedent that the assured should produce a certificate under the hand and seal of a magistrate, notary public, or commissioner of deeds (nearest the place of fire and not concerned in

1875. June Term.

the loss, as a creditor or otherwise, nor related to the plaintiff,)— correct, fair pleading, requires that the kind of officer should be stated in the declaration, that the court may determine whether it was the proper officer. The production of the certificate of one of the officers specified, is a condition precedent, and must be complied with, unless properly waived by defendant. It is best and correct to state the name of the officer.

1875.<br>June Term.<br><br>Simmons<br>v.<br>Insurance Co.

4. The declaration in describing the term for which the policy was in force, alleges that it was "from the said 6th day of January, 1870, until the 6th day of January, 1871," whereas the policy says, "from the 6th day of January, one thousand eight hundred and seventy, at noon, to the sixth day of January, one thousand eight hundred and seventy-one, at noon."—this is a material variance between the policy described and the policy produced.

5. Where the declaration fails to state all the exceptions contained in the policy which materially qualify the defendant's liability, or exempts the defendant from all responsibility, absolutely, in certain instances, the variance is fatal.

6. The declaration alleges that the insurance money was to be paid to the plaintiff in sixty days after notice and proof of the same, &c., while the policy produced states "the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proof of the same, by the assured *and received at this office*, &c."—there is a material variance as to the time the money become payable.

7. Where the plaintiff's application for insurance contains warranties which are not attached to the policy, in whole or in part, or set out in the policy, it is not necessary for the plaintiff to state such warranties in his declaration—they are matters in defeasance of the plaintiff's action—they are matters which should more properly come from the other side.

8. Under the evidence and peculiar circumstances of this case, as stated in the opinion of the Court, it was not error in the court below to refuse to give the following instructions asked by the defendant, viz: "If the jury believe that the chimney and pipes in the room occupied by the plaintiff, and which contained the goods destroyed by fire, were not kept well secured during the time between making the insurance and the happening of the loss, the jury must find for the defendant, and the warranty is broken by permitting the pipes to remain in the same condition as at the time of insurance, if they were not well secured at that time." "The application No. 321, made by the plaintiff to the defendant being specially referred to in the policy sued on in this.

case, and by the terms of said policy is the plaintiff's express warranty, and binding on him in this case. If that application is in any respect false or untrue, or the plaintiff has failed to comply, in any and every particular, with his promises or agreements therein contained, as if the plaintiff has failed to keep chimneys, fire places, stoves and pipes all well secured, the policy becomes void as between the plaintiff and defendant."

9. Under the said evidence and peculiar circumstances of the case it was not error for the court below to instruct the jury, at the instance of the plaintiff, as follows: "If the jury find that the agent of the defendant, who took the application, had, at the time, a knowledge of the building, and the manner in which the stovepipe and chimney were secured at the time the insurance was effected, and took upon himself to fill up the blank application, and did so upon his own information, then it was not required of the plaintiff, under the policy, to change the condition of the pipe and chimney, but he was required to keep them in good order and condition, but was not required to put them in better order and condition than they were in at the time the insurance was made."

10. Evidence having been given to the jury in this action which is based on a policy of insurance against loss and damage by fire, tending to prove that the plaintiff intentionally and fraudulently caused the insured property to be set on fire and destroyed, and that the loss or damage claimed in plaintiff's declaration was occasioned by such act of the plaintiff, and the plaintiff having given evidence to the jury tending to rebut such evidence of the defendant, and tending to prove the contrary, it was error in the court—under the issue joined in the case—to refuse to give to the jury the following instruction, asked by the defendant, viz: "It is not necessary, in order to prevent the plaintiff's recovery that the plaintiff should be proved beyond a reasonable doubt to have intentionally and fraudulently caused or permitted the said insured property to be set on fire, but if the weight or preponderance of evidence be to that effect the jury should find for the defendant."

*Supersedeas* to a judgment of the municipal court of Wheeling, rendered on the 28th day of August, 1871, allowed on the petition of the West Virginia Insurance Company—the defendant below. The plaintiff was James H. Simmons. The other facts appear in the opinion of the Court.

The Hon. M. C. Good, judge of said municipal court, presided at the trial below.

*Daniel Lamb* and *William P. Hubbard* for the appellant.

*C. W. B. Allison* for the appellee.

HAYMOND, PRESIDENT: .

This is an action of assumpsit founded on a policy of insurance made by the defendant to the plaintiff on the 6th day of January, 1870. The policy insures the plaintiff against loss or damage by fire to the amount of $2,-000 on his stock of dry goods, groceries, queensware, hats, caps, boots and shoes, and such other articles of merchandise as are usually kept in a country store, all contained in the one story frame building situate on the south side of State street, in the town of Portland, Preston county, West Virginia, and occupied by assured as a store room, subject to certain exceptions, conditions, &c., some of which are hereinafter considered.

The declaration alleges that the property, so insured, was accidentally destroyed by fire on the 21st day of January, 1870.

The action was brought in the municipal court of Wheeling on the 7th day of May, 1870, and judgment was rendered therein in favor of the plaintiff against the defendant on the 28th day of August, 1871.

The defendant demurred to the plaintiff's declaration, and the court overruled the demurrer.

The defendant then pleaded non-assumpsit. This plea seems to have been filed on the 19th day of September, 1870; and at the same time the defendant filed two other pleas; *one* of which avers, that the plaintiff, in making the statement, under his signature and verified by his oath, purporting to be such particular account of the loss or damage sustained by him by reason of the destruction by fire of the property mentioned and intended to be insured by the said policy of insurance, was guilty of fraud and false swearing; and the *other* avers, that the plaintiff intentionally and fraudulently caused and permitted the said insured property to be set on fire and destroyed on the said 21st day of January, 1870.

Upon each of these pleas issue was regularly made up and joined.

Subsequently, and on the 3rd day of February, 1871, the defendant filed three additional pleas numbered respectively in the record four, five and six.

Plea No. 4 it is unnecessary to consider, as no question arises upon it, so far as the record discloses.

Plea No. 5 avers, substantially, that in said policy special reference is made to an application in writing made by the plaintiff No. 321, which was his warranty and a part of said policy. And that in his said application, the plaintiff agreed to keep the chimneys, fire places, stoves and pipes in the building occupied by him, in which the fire occurred, well secured, but on the contrary the said chimneys and pipes were not well secured, and were wholly unsafe, by reason whereof, and the breach of the plaintiff's said warranty contained in his said application, the plaintiff forfeited all claim under the said policy.

Plea No. 6 I will not notice here because no question fairly arises upon it, upon the record, as it comes to us.

To the *three* last named pleas the plaintiff filed general replications and issue was sufficiently made up on each of the pleas.

On the 24th day of August, 1871, a jury was empanneled and sworn to try the issues in the cause, and on the 26th of the same month they rendered a verdict in favor of the plaintiff for the sum of $2,000 with interest thereon from the 2nd day of May, 1870, and on this verdict the court, on the 28th of August of the same year, rendered judgment in favor of the plaintiff against the defendant for the amount of the verdict and the costs of suit. To this judgment a *supersedeas* has been heretofore allowed. And thus the cause has been brought before this Court for consideration.

The *first* error assigned by the counsel of defendant (who is plaintiff in error) is that the court erred in overruling the demurrer to the declaration. This assign-

ment will be *first* considered. The declaration, after describing the goods, wares, &c., insured, the house in which the goods were kept, and the plaintiff's interest in the goods, wares, &c., and the destruction of the same, and the house in which they were kept, among other things, alleges as follows: " and the said West Virginia Insurance Company, defendant, on the same day, in consideration of a premium in money then and there paid to them therefor by the plaintiff, made a policy of insurance upon the said property in said building, and thereby promised the plaintiff to insure $2,000 thereon, from said 6th day of January, 1870, until the 6th day of January, 1871, against all such immediate loss or damage as should happen by fire to the said property, above specified, other than loss by theft at or after a fire, and other than fire happening by means of any invasion, insurrection, riot, civil commotion or military or usurped power, and other exceptions in said policy mentioned, to the amount aforesaid, to be paid to the plaintiff in sixty days after notice and proof of the same, upon condition that the plaintiff, in case of said loss, should forthwith give notice of such loss to said Company, and as soon thereafter as possible, should render a particular account of such loss, signed and sworn to by him, stating whether any and what other insurance had been made on the same property, &c., and should produce a certificate under the hand and seal of a magistrate, notary public or commissioner of deeds (nearest the place of fire, and not concerned in the loss as creditor or otherwise, nor related to the plaintiff,) that he had examined the circumstances attending the loss, and knew the character and circumstances of the plaintiff, and verily believed that the plaintiff had, without fraud, sustained by such fire loss on said property insured, to the amount therein mentioned," &c. It is argued that the declaration does not allege that the *plaintiff* was insured; that it only alleges a *promise* to insure; also, that it is not sufficiently alleged that the promise was to insure the plaintiff. It seems to me,

1875.
June Term.

Simmons
v.
Insurance Co.

upon reading the whole of the declaration I have quoted in that connection, that these exceptions are not well taken, and should not be sustained, especially under the twenty-ninth section of chapter one hundred and twenty-five of the Code of 1868.

It is further argued that the declaration alleges certain specific exceptions in the policy which qualify the defendant's liability on the policy, and, in effect, admits there are other such exceptions not therein stated, but contained in the policy, and that this is a fatal defect in the declaration on general demurrer. This presents an interesting question, and one on which there is, at least, some apparent conflict in some of the authorities. "If the plaintiff allege a condition subsequent to his estate, he need not aver performance, but the breach must be shown by the defendant, and matter in defeasance of the action need not be stated; wherever there is a circumstance, the omission of which is to defeat the plaintiff's right of action, *prima facie* well founded, whether called by the name of a proviso, or a condition subsequent, it must, in its nature, be a matter of defense, and ought to be shown in the pleadings by the opposite party." Chitty on Plead. 6th Am. ed. from the 5th London ed., pages 254 and 255 ; 6 vol. of Comyn's Digest, Pleader, C, (81); *Hotham, Knight &c. v. The East India Company*, 1 Term Rep. 638, 645. In the case of *Vavasour v. Ormrod*, 6 B. & C. 430, cited in 1 Chitty on Plead. 255, was an action upon a lease, and the declaration described the *reddendum* as containing an absolute reservation of rent. In fact the *reddendum* was "yielding and paying during the term, (except as hereinafter mentioned,) the yearly sum," &c. In the latter part of the lease there was a covenant and proviso by which a deduction was to be made, if a certain event happened ; and it was *held* that the declaration was bad. Lord Tenderden said : "If an *act of parliament* or a *private instrument* contain in it, first, a general clause, and afterwards a separate and distinct clause, something which would otherwise be in-

cluded in it, a party relying upon the general clause, may set out that clause only, without noticing the separate and distinct clause which operates as an exception; but if the exception itself be incorporated in the general clause, then the party relying upon it must, in pleading, state it with the exception; and if he state it as containing an absolute, unconditional stipulation, without noticing the exception, it will be a variance. This is a middle case. Here the exception is not, in express terms, introduced into the reservation, but by *reference only* to subsequent matters in the instrument. The words are, "except as hereinafter mentioned." The rule here applies *verba relata inesse videntur*. And the clause thereinafter mentioned must be considered as an exception to the general clause by which the rent is reserved, and then, according to the rule above laid down, the plaintiff ought, in his declaration, to have stated the reservation and the exception. And the variance is fatal. In 1 Chitty on Plead. pages 332 and 333, it is laid down, "that it is sufficient to state those parts of the contract whereof a breach is complained, or, in other words, to show so much of the terms beneficial to the plaintiff in a contract, as constitutes the point for the failure of which he sues; and that it is not necessary or proper to set out in the declaration, other parts not qualifying or varying in any respect, the material parts above mentioned." It is also asserted in 1 Chitty on Plead., pages 339 and 340, that if the defendant's promise or engagement, whether it be verbal, in writing or under seal, embody or contain, *as part of it, an exception or proviso*, which *qualifies* his liability; or, in certain instances, renders him altogether irresponsible; so that he was not in law *absolutely* bound; the declaration must notice the exception or proviso, or there will be a fatal mistatement. Thus, where the declaration stated the defendant had undertaken to carry and deliver goods safely, and the contract proved was to carry and deliver them safely, fire and robbery

61

excepted, it was *held* that there was a fatal variance. *Tempany v. Burnand,* 4 Campbell's Rep. 20; *Latham v. Rutley* 9 Eng. Com. Law Rep. 10; *Howell v. Thomas Richards,* 11 East 633. When, however, the proviso in a written instrument is *distinct* from, and not even *referred* to, by the clause on which the debt is charged, it is considered matter of defeasance, &c., which ought to come from the other side, and then it need not be set forth by the plaintiff. 1 Chitty on Plead. 340. It is also a general rule of pleading that matter which should come more properly from the other side need not be stated. 1 Chitty on Plead. 255.

The plaintiff, in support of the declaration has cited the case of *Lounsbury v. Protection Ins. Co.,* 8 Conn. 459 reported in First Fire Insurance Cases by Bennett, 369. But in that case the declaration recited the execution of the policy by the defendants, and recited its provisions and the articles annexed as "conditions of insurance," and the question before the court was whether it was necessary, by averment in the declaration, to negative the exceptions and not whether it was necessary to state the exceptions. The court *held* that "a declaration on a policy need not negative the exceptions therein, such as that the loss did not happen from invasion or that the building was not used for hazardous trades or other similar clauses introduced, not as conditions precedent, but by way of proviso for the benefit of the insurer." The case of *Hunt v. Hudson River Fire Insurance Company,* 2 Duer. (N. Y.) 481, decides the same principle held in the case in 8 Conn. above cited. The form of declaration given by Mr. Greenleaf in the 2d vol. of his work on Evidence in note 1 to section 376, in the simplest cases of marine polices, and also the form given in same volume in note 3 to section 404 in cases of policies against fire, Mr. Greenleaf in his said note 1 says: "The following forms of counts in the simplest cases arising upon marine policies established in Massachusetts, are well adapted to the brevity of modern practice at common

law in any of the United States;" and in his said note 3 he says: "The following is the usual form of a count upon a valued fire policy." But at the end of this form he adds, "see as to stating the limitations and qualifications," a number of authorities there cited," and be the adds "see *contra*, 8 Conn. 459" which is the case to which I have referred. Chitty in his first vol. on Plead p. 334 says: "It is a general rule, that the contract must be stated correctly, and if the *evidence differ from the statement*, the whole foundation of the action fails." It seems to me after careful examination of such authorities as I have before me that where exceptions in a policy of insurance qualify the defendant's liability or renders the insurer altogether irresponsible in certain instances so that he is not in law *absolutely* bound, correct pleading requires that the exceptions should be stated in the declaration although it is not necessary to negative them by averment. It is not necessary to negative them by averment because it is not necessary, generally, to aver in the declaration more than is required to be proved. Generally, the defendant if he claims the benefit of such exemption should plead and prove it. The exceptions in the form and connection they are alleged in the case in judgment must be considered as a part of the general clause of insurance contained in the policy— The admission in the declaration that there are such exceptions in addition to those stated will be considered as true upon the demurrer, and the failure to state them is a defect in pleading and is reached by demurrer in this case.

It is further argued that the allegation in the declaration that the certificate of an officer required by the condition precedent and which the plaintiff delivered was "under the *hand* of the *proper officer*" is defective in two respects, viz: *first.* It should state what officer it was and his name, and *second* the certificate should be stated to be under the hand and seal of the officer, instead of under his hand. I think the kind of officer should be

stated in the declaration that the court may determine whether he was the proper officer. The production of the certificate of one of the officers specified is a condition precedent and must be complied with unless properly waived by the defendant. *Worsley v. Wood*, 6 Term Rep. 710 and 1 Bennett's Fire Insurance Cases, 53 ; *Protection Insurance Co. v. Pherson* 5 Ind. 417 and 3 Bennett 753; 8 Exch. 819; *Mason v. Harvey* 3 Bennett 548. I think the name of the officer should be stated in fairness to the defendant, but the failure to do so may not be cause of general demurrer. Still I am inclined to think it should be so held. In this State a magistrate has no official seal, and is not required to keep one. It cannot therefore be said that the official seal of a magistrate was contemplated and if not of a magistrate so of a notary and commissioner of deeds. The principal, and indeed the only object, as it appears to me, was to require the official certificate of the officer and if that is given the principal and every benificial object or security contemplated would be complied with. It is true the "seal" is in the contract and it is safest and best to comply with the contract in that respect. Still if the certificate was correct in every other respect I should hesitate long before holding it insufficient for want of a seal. However I do not now definitely determine that question. For the reasons stated it appears to me that the court erred in overruling the demurrer. I think it would perhaps be well to precede the concluding averment contained in this declaration with the general averment "that all things have happened which it is necessary should happen to entitle the plaintiff to be paid said sum of $2,000," though perhaps it may not be absolutely necessary,

The *second* error assigned is, that there is "material variance between the declaration and policy offered in evidence." At the trial the defendant objected to the policy being given in evidence to the jury, because of variance ; but the court overruled the objection. On

a comparison of the policy with the declaration, it is apparent that it is materially variant in at least three material particulars, if not more, to wit: *First.* The declaration, in describing the term for which the policy was in force, alleges that it was from the "said 6th day of January, 1870, until the 6th day of January, 1871," whereas the policy says "from the 6th day of January, one thousand eight hundred and seventy, at noon, to the sixth day of January, one thousand eight hundred and seventy-one, at noon." The term for which the property was insured, according to the declaration, excludes the whole of the 6th of January, 1870, and makes the term of insurance commence with the beginning of the 7th of January, 1871; while, according to the policy, the term commenced at noon of the 6th of January, 1870, and ended at noon the 6th day of January, 1871. *Second.* The declaration does not state all the exceptions contained in the policy, which, by the policy, exempts the defendant from all responsibility in certain instances. There are numerous exceptions stated in the policy of that description immediately following those stated in the declaration, and in the same clause of the policy. *Third.* The declaration alleges that the insurance money was "to be paid to the plaintiff in sixty days after notice and proof of the same," &c., while the policy produced states "the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same made by the assured and *received at this office,*" &c. So that the loss or damage did not become payable sixty days after notice and proofs of the same, as stated in the declaration, but sixty days after due notice and proofs of the same was made by the assured and received at the defendant's office. But it is also insisted by the defendant that the application of the assured, made to the defendant for insurance, contains a warranty made by the defendant, and that said application is, by the policy, expressly made the warranty of the

plaintiff and a part of the policy; that the declaration does not refer to or set out in any manner the warranty or aver, either generally or specially, the performance thereof, and that, therefore, there is a variance between the contract described and the policy. The policy, near the commencement thereof, and immediately after describing the property and the house in which it was kept, says, "special reference being had to assured's application, No. 321, which is his warranty and a part hereof." In another part of the policy, found after the general insurance clause, this language is found, viz: "If any application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of the contract and a warranty by the insured," &c. I don't think it was necessary for the plaintiff to set out in his declaration the warranties contained in the application, in whole or part. I regard the warranties contained in the application as matters in defeasance of the plaintiff's action. No part of the application is attached to or set out in the policy, and no reference is made in the policy to the application, or any warranty therein, other than as I have before stated. If the application is a *defeasance*, or must be considered as such, then according to my understanding of the authorities already referred to, it is unnecessary for the plaintiff to state or notice the application or any warranty therein in his declaration. It is matter which should come more properly from the defendant. Bouvier, in his Law Dictionary, defines defeasance as applied to contracts to be "an instrument which defeats the force or operation of some other deed or estate. That which in the *same deed* is called a condition, in another deed is a defeasance." The application is presented to the defendant, containing representations and promises touching the property asked to be insured, and is signed by the plaintiff. The defendant issues the policy and delivers, or causes it to be delivered, to the plaintiff as his

paper, containing the undertakings and promises of the defendant to it, but the defendant retains the application as its paper for its benefit, with which it may, if the warranty, or warranties, contained therein, are broken, utterly defeat any recovery upon the policy for loss or damage to the property by fire, by the plaintiff. If the plaintiff were required to state the warranties contained in the application and aver and prove performance thereof, he would, in many instances, be required to do that which was out of his power. To set out correctly the warranties contained in the application, the plaintiff, or his counsel, should have access to the application. It is in the possession of the defendant, as its property, and I am not aware of any legal remedy provided by law by which the plaintiff could compel the defendant to file the application in court or to deliver it, or a copy thereof, to him before the filing of the declaration. In this case the defendant signed the application in blank, and it was afterwards filled up by the defendant's agent, and forwarded by such agent to the defendant,—the plaintiff not knowing how it was filled up, or what it contained. How could the plaintiff describe the warranties contained in the application in such case, in his declaration? The fact that the warranties are not inserted in the policy, in any way, but are contained in a separate paper, retained, properly, by the defendant, as its paper, for its defense and protection, and the policy is delivered to the defendant, as his paper, for his security and as the evidence of his right, in case of loss or damage by fire, it seems to me, at once demonstrates the true understanding of the parties as to these papers, as to their proper use and legal effect, viz: that the plaintiff might sue upon the policy and give the policy in evidence in support of his right to recover, and that the defendant might defend by proper plea and give the application with its warranties in evidence, together with the proof of the warranties being broken by the plaintiff, in bar of the plaintiff's action—in other words, in defeasance of the

plaintiff's action. Of course the plaintiff would be entitled to produce, in such case, evidence in rebuttal of that of the defendant upon that subject. I think the uniform practice in the inferior courts of this State has been in accordance with this view.

It appears by bill of exceptions No. 2 that the defendant gave in evidence to the jury the application of the plaintiff, upon which the policy was issued to him by defendant. This application contains, in the commencement thereof, a description of the goods, &c., the value thereof, the sum insured, the rate of insurance, the premium and where the goods are kept. The *second* question in the application is "size and number of stories of each building to be insured" and the answer written thereunder is, "The goods and merchandize are in the house insured as store room for Mrs. Nancy Wotring by your Company last summer." The *third* question "Is the building stone, brick or wood, when built and in what repair ? and of what material is the roof?" Answer, "see diagram on said application"—all other questions, being twelve in number, contained in the application, are blank and unanswered. But there is at the end of the questions this provision, "I do hereby agree to keep chimneys, fire places, stoves, and pipes all well secured, and ashes in a safe deposit and declare that the above questions are correctly answered ; that the foregoing is a correct description of the property upon which insurance is solicited, and that the estimated value which is fixed thereon is a just and proper valuation of the same; and that I have not withheld any circumstance or information in any manner increasing the hazard of the above enumerated property with which the Company ought to be made acquainted. Any misrepresentation in effecting this insurance shall be deemed not only a sufficient cause for cancelling my policy, but render the insurance void." This application was signed by plaintiff. The defendant also gave in evidence the application of Mary Ann Wotring, which the court certifies is the application referred

to in said application of the plaintiff. By this application it appears that the store room is valued at $600, insurance $400, and the location of the store room is given. The store room is described in answer to question two as being one story twenty by forty feet and the answer to the third question is that the house is wood and the roof new pine shingles. The fifth question is, "If the stove pipes pass through wooden partitions or floors how are they secured and how near the wood," and the answer is, "secured by flues, and pass into chimneys." There is the same agreement contained at the close of this application as that of the plaintiff before quoted. It further appears that there was also evidence given to the jury tending to prove that John P. Jones, who was the agent of the defendant empowered to receive applications for insurance, and to collect and transmit the premiums therefor and as such agent took said applications for insurance; and was authorized to collect and transmit the premiums therefor, and as such agent took said applications, resided and did business as a merchant about twenty-five yards from said store-room, and before and at the time plaintiff's application was made had knowledge of the condition of said store-house, and of the manner in which the stove pipes and flue or chimney therein were constructed and secured and made no objection thereto; that at the time he took plaintiff's application, he presented the blank to the plaintiff with the printed matter alone in it, which the plaintiff signed without reading the application or knowing its contents, although he had an opportunity of doing so, and left the blank application so signed with said Jones; that Jones made no inquiries of plaintiff, and after receiving the signed blank filled it himself, and a few days afterwards delivered the policy to plaintiff and received the premium therefor—the plaintiff having no further knowledge of the application or the manner in which it had been filled up. The plaintiff also gave evidence to the jury tending to prove that the

property insured by said policy belonged to the plaintiff at the time the insurance was made, as well as at the time of the fire hereinafter mentioned; and that the same was destroyed by fire on the 21st day of January, 1870, and the plaintiff sustained loss by said fire to an amount equal to the sum so insured on said property; and there being also evidence before the jury tending to prove that the pipe and chimney in the building and room in the policy in said application No. 321, mentioned, so occupied by the plaintiff and containing the property so insured, was not well secured at the time the said building and room were erected in the spring of 1869, and so remained until the destruction of said property by fire as aforesaid, the said pipe and the stove-pipe from the stove used for heating said room entering the said pipe and chimney near the ceiling of said room, and that no repairs had been made to the said pipe and chimney up to the time of said fire, but there was no evidence tending to prove that said pipe and chimney were at the time of said fire in any less secure condition than they were at the time of said application No. 321, and said policy was made. In this state of the case the defendant moved the court to instruct the jury as follows, viz: "If the jury believe that the chimneys and pipes in the room occupied by plaintiff and which contained the goods destroyed by fire were not kept well secured during the the time between making the insurance and the happening of the loss, the jury must find for the defendant and the warranty is broken by permitting the pipes to remain in the same condition as at the time of insurance, if they were not well secured at that time." The court refused to give the instruction and the defendant excepted. This is bill of exceptions No. 2.

By bill of exceptions No. 3, it appears that evidence was given to the jury, as stated in the defendant's *second* bill of exceptions, and also evidence tending to prove that $3,000 was an overvaluation of the goods mentioned in said application, at the time the application was

made. Whereupon the defendant's counsel moved the court to instruct the jury that "The application No. 321, made by the plaintiff to the defendant, being specially referred to in the policy sued on in this cause, and by the terms of said policy made the warranty of the plaintiff and a part of the said policy is the plaintiff's express warranty, and binding on him in this case. If that application is in any respect false or untrue, or the plaintiff has failed to comply in any and every particular with his promises or agreements, therein contained, as if the plaintiff has failed to keep the chimneys, fire places, stoves and pipes all well secured, the policy became void as between the plaintiff and defendant." The court refused to give this instruction and the plaintiff excepted.

1875.
June Term.

Simmons
v.
Insurance Co.

By bill of exceptions No. 4, it appears that after evidence was given, as in the *second* bill of exceptions is stated, the plaintiff, by his attorney, moved the court to instruct the jury that "If the jury find that the agent of the defendant, who took the application, had at the time a knowledge of the buildings, and the manner in which the stove pipe and chimney were secured at the time the insurance was effected, and took upon himself to fill up the blank application, and did so upon his own information, then it was not required of the plaintiff, under the policy, to change the condition of the pipe and chimney, but he was required to keep them in good order and condition, but was not required to put them in better order and condition than they were in at the time the insurance was made." The court gave this instruction to the jury and the defendant again excepted.

I will consider the two instructions asked by defendant, which were refused, and the one given by the court at the instance of the plaintiff, under the defendant's *third* assignment of error, because they, in a great degree, involve the same principles applicable to this case, as disclosed by the record. It is proper to state that the application was partly printed and partly in writing—that the agreement, near the conclusion of the applica-

tion to keep the "chimneys, fire places, stoves and pipes all well secured," &c., before quoted, was all printed except the pronoun "I," before the words, "do hereby," &c., in the commencement of the agreement, and that it was inserted by defendant's said agent. And all other matters contained in the application in relation to said property which therein appears, such as the value of the property insured, the amount of insurance, the description of the property and of the house, where kept, &c., were inserted and given by defendant's said agent. In a word, all the blanks were filled in by defendant's said agent. The plaintiff's goods, which were insured, and the house in which they were kept, were burned on the fourteenth day after the date of the policy, and most probably some days less after the delivery of the policy to him, as the policy was sent from Wheeling to Portland, in Preston county, by defendant to its agent, and by the agent afterwards delivered to plaintiff, though the date of the delivery does not appear. Among other things it is provided in the policy that "if the above premises shall be occupied or used so as to increase the risk, or become vacant and unoccupied, or the risk be increased by the erection of adjacent buildings, or any other means whatever within the control of the assured, without the consent of this Company endorsed hereon ; or if the property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, &c., without the consent of the Company endorsed hereon, &c., this policy shall be void."

The policy also provides that "any false representation by the assured of the condition, situation, or occupancy of the property, or any omission to make known every fact material to the risk or any over valuation or misrepresentation whatever, either in the written application or otherwise," shall annul and make void the policy. It would seem from these provisions that the Company issued its policy of insurance on the faith of the represen-

tations of the assured as to the condition of the house and property at the date of the application, or the policy issued on the faith that the house and property is in the condition it is represented, and there is no concealment by the assured as to its condition. This, I apprehend, must be so, except in cases where the representations are taken as those of the defendant or its agent, and not those of the assured, and where the omission to state truly the condition of the house in which the property insured is kept, is the fault of the defendant or its agent and not of the assured. If the foregoing be a correct interpretation of the provisions of the policy, or their legal effect, the inference is that the Company considers the chimneys, fire places, stoves and pipes all well secured within the meaning of the policy at the time the policy is issued and delivered, and this is so, whether the representations or omissions are those of the assured or of the defendant or its agent. It should be stated that it appears that the house in which the goods, &c., were kept was insured for Mrs. Wotring by defendant, in June, 1869, and that the policy did not expire until June, 1870, and that the printed part of her application was and is in all respects similar to the application signed by plaintiff. The house was insured for Mrs. Wotring, by defendant, before and at the time the policy to plaintiff was issued upon the goods, &c., therein mentioned. "Insurance companies who do business by agencies, at a distance from their principal place of business, are responsible for the acts of the agent within the general scope of the business intrusted to his care, and no limitation of his authority will be binding on parties with whom he deals which are not brought to their knowledge. Hence, when their agents, in soliciting insurance, undertake to prepare the application of the insured or make any representations to the insured as to the character or effect of the statement of the applications, they will be regarded in doing so, as the agents of the insurance companies, and not of the insured. This principle

is rendered necessary by the manner in which these agents are sent over the country by such companies, and stimulated by them to exertions in effecting insurance, which often lead to a disregard of the true principles of insurance as well as fair dealing. In such cases the insurers cannot protect themselves under instructions to their agents, that they are agents for the purpose of receiving and transmitting the application and the premium." *Insurance Co. v. Wilkinson,* 13 Wall., (Sup. Ct. U. S.) 222, 223. See, also, *Masters v. The Madison County Mutual Insurance Co,* 11 Barb. (N. Y.) 624. "An agent, authorized to take applications for insurance, should be deemed to be acting within the scope of his authority when he fills up the blank application of insurance; and if, by his fault or negligence, it contains a material misstatement not authorized by the instructions of the party who signs it, the wrong should be imputed to the company, and not to the assured. A policy of insurance should not be avoided for an error by the agent of the company, acting within the general scope of his power, on the artificial and unwarranted assumption that he is the agent of the other party to to the contract.". *Rowley v. The Empire Insurance Company,* 36 N. Y. 550; 1 Greenleaf on Evidence, section 406 ; *Roth v. The City Insurance Co.,* 6 McLean (Cir. Ct. U. S.) 324; *Howard Fire Insurance Company v. Bruner,* 23 Pa., St. 50. In this last case Lowrie, J., who delivered the opinion of the court says: "There can be no doubt that there are important errors and omissions in the written description on which this policy purports to be founded; but the plaintiff has explained all this by the testimony of the defendant's agents, who prove that all they knew about the property from the verbal description of the plaintiff to them, and from having surveyed it with a view to this insurance and that the description was made out under their advice and counsel, and then signed by the plaintiff. This raises the main question, was this legitimate evidence. It is very apparent, from all the

evidence, that this policy was not entered into by the defendants on the faith of the plaintiff's answers contained in the written application and description; for many of the questions which are very material are only partly answered, or not at all; and the whole treaty for the insurance and its terms were completed by the defendant's agents who knew all about the property. There is, therefore, no merit in this defence on the ground of the defects of the description; and the law can have no object in sustaining it, except in order to preserve some valuable rule of its own from violation." Flanders on Fire Insurance 180 to 188. "But if such agent actually makes the survey, being as well acquainted with the locality of the premises as the assured is, and when he takes the whole authority of making the representation on a view of the premises, I must think, until over-ruled, that the assured is not responsible either for concealment or misrepresentation." It is evident that the policy in the case in judgment was not issued upon any misrepresentation or concealment of plaintiff either as to the value of the property insured or the condition of the house, chimney, fire place, stove, or pipes or otherwise; that the defendants agent had knowledge thereof and that he regarded the stove pipes, &c., as being well secured at the time the application was made and that the defendant should, in this peculiar case, be held bound by the knowledge and judgment of its agent and estopped from denying that the stove pipes and chimney were well secured at the date of the application and that the warranty of the plaintiff to keep the chimneys, fire places stove and pipes well secured must in this case be held to bind him only to keep them as secure as they were when the application was made—it not appearing that the Company or its agent gave notice to or intimated to plaintiff in any respect that the stove pipes or chimney were in anywise insecure or required to be made more secure which, under other circumstances, could not be required. It seems to me that any other ruling in this case would

be unjust, injurious and operate a fraud on the defendant and contrary to the spirit and letter of the authorities I have cited above. "Where the representation is made under the direction of the insured, or without a view of the premises by the agent it would be just to hold the assured responsible." 6 McLean 338. With these views as to this particular case, under the circumstances, I think the court did not err in refusing to give the instructions to the jury asked by the defendant and mentioned in bills of exception Nos. 2 and 3 and also that the court did not err in giving the instruction to the jury which was asked by the plaintiff and mentioned in bill of exception, No. 4.

I now pass to the consideration of the matter of the defendants fifth bill of exceptions. By this bill of exceptions it appears that evidence was given to the jury as stated in the *second* bill of exceptions and also evidence tending to prove that the plaintiff intentionally and fraudulently caused the said insured property to be set on fire and destroyed, and that the loss or damage claimed in the plaintiff's declaration was occasioned by such act of the plaintiff, and the plaintiff gave evidence tending to rebut the same and prove the contrary. And thereupon the defendant by his counsel, moved the court to instruct the jury that "It is not necessary in order to prevent the plaintiff's recovery that the plaintiff should be proved, beyond a reasonable doubt, to have intentionally and fraudulently caused or permitted the said insured property to be set on fire ; but if the weight or preponderance of evidence be to that effect the jury should find for the defendant." But the court refused to give the instruction and the defendant excepted. The principle involved in the instruction, as asked, is important and interesting. There is a conflict in the authorities upon the subject. In civil cases where the mischief of an erroneous conclusion is not deemed remediless, it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the

weight of evidence preponderates, and according to the
reasonable probability of truth. But in criminal cases,
because of the more serious and irreparable nature of the consequences of a wrong decision, the jurors are required to be satisfied beyond any reasonable doubt of the guilt of the accused or it is their duty to acquit him—the charge not being proved by that higher degree of evidence which the law demands. In civil cases it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it is adduced to prove ; but in criminal cases it must exclude every other hypothesis but that of the guilt of the party. Opinion of the court in *The People v. Schuryver* 42 N. Y. 5 and 6; 3 Greenleaf on Ev. section 29. Reasonable doubt is defined by Chief Justice Shaw, in *Commonwealth v. Webster*, (5 Cush., Mass, 320), to be "that state of the case which after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say that they feel an abiding conviction, to a moral certainty, of the truth of the charge." "An honest hesitancy in view of the evidence may pervail against a balance of evidence in the trial of crimes, which need not prevail in civil actions." Opinion of Judge Ellsworth in *Munson v. Atwood*, 30 Conn. 106. "Evidence which satisfies the minds of the jury of the truth of the fact in dispute, to the entire exclusion of reasonable doubt, constitutes full proof of the fact. From the highest degree it may decline by an infinite number of gradations, until it produce in the mind nothing more than a mere preponderance of assent in favor of the particular fact. The distinction between full proof and mere preponderance of evidence is in its application very important. In many cases of a civil nature, where the right is dubious and the claims of the contesting parties are supported by evidence nearly equipoised, a mere preponderance of evidence on either side may be sufficient to turn the scale." 1 Starkie on Ev. 478. "In civil cases an honest belief, a belief which results from a careful, diligent

investigation of the proof, is all that is to be expected, and such belief must be satisfactory if courts of justice are to accomplish anything in the trial of causes." Opinion Ellsworth, J., 30 Conn. 107. "Where, in an action against an insurer for loss by fire, the defense is that the assured himself set fire to the premises, the evidence for the defense is not required to be as full and conclusive as would be necessary to support an indictment for arson." *Hoffman v. The Western Marine and Fire Insurance Co.*, 1 La. 216; 2 Bennett's Fire Insurance Cases 481; "In actions of slander, where the words charged impute crime, and the defendant pleads the truth in justification, he must prove the actual offence charged—that is, he must prove the *same matters or facts* that would be requisite to convict the plaintiff on trial upon indictment for the crime. But it is not necessary to prove the facts to the exclusion of all reasonable doubt, as in criminal cases. It is sufficient if the defendant leaves a fair preponderance in the minds of the jury in his favor, notwithstanding the plaintiff's evidence and the presumption of innocence." *Ellis v. Buzzell*, 60 Maine 209; 11 Am. Rep. 204; 12 Am. Law Reg. 426; also the able note of Judge Redfield, at the end of the case in Am. Law Reg. 431 and 432. "In an action on a policy of insurance, where the defence set up was that the assured set fire to the building insured, it was *Held:* That the rule of evidence was not, as on an indictment for arson, that the jury must be satisfied beyond a reasonable doubt."

An action on a policy of insurance is a civil action, and though the defense set up be that the plaintiff set fire to the building insured, the rule of evidence is the same as in other civil actions, and the jury may find the issue upon the weight or preponderance of evidence. *Washington Union Insurance Co. v. Wilsons*, 7 Wis., 169. See also 1 United States Digest, 276, under the head of Evidence, sections 3, 4 and 5; 50 Ill., 206; 42 Vt. 80; 57 Maine, 495. Plaintiff's counsel have cited us to 1 Bing., 339; 8 J. B. Moore, 612; 1 Fire Insurance Cases,

131; 35 Maine, 227; 18 Ill., 228; 2 Green on Ev., 408; 2 Phillips on Insurance, 503. On due consideration it seems to me that the principles held in the case of *Ellis v. Buzzell,* above quoted, and also the case in 7 Wisconsin, above cited, are correct, and should be recognized here as being sound in a case of the character of that now before us. The reasons stated in the opinion of the court in *Ellis v. Buzzell,* and in the note of Judge Redfield thereto, in connection with other authorities, I think, are satisfactory when applied to this case. Entertaining this opinion, I think the court erred in refusing to give to the jury the said instruction asked by the defendant and set forth in said *fifth* bill of exceptions.

It may be, however, that a different rule should prevail as to the plaintiff in an action brought by him to recover damages for a cause of action founded upon crime, as an action for adultery, but as to this I do not now determine, as the case before us is not of that character. The case before us simply involves the question as to which party shall bear the loss occasioned by the fire.

For the foregoing reasons the judgment of the municipal court of Wheeling, rendered in this cause on the 28th day of August, 1871, must be reversed, the verdict of the jury set aside, and a new trial granted in the cause, the costs of the former trial to abide the final result of the cause. The plaintiff in error must recover his costs here, and the judgment of the said court overruling the demurrer to plaintiff's declaration must be reversed, and the cause must be remanded to said municipal court, with leave to the plaintiff to file an amended declaration, and for further proceedings therein there to be had according to law.

Hoffman and Moore, Judges, concurred.

JUDGMENT REVERSED, VERDICT SET ASIDE AND A NEW TRIAL GRANTED.