## THE CONTINENTAL INSURANCE COMPANY OF NEW YORK v. AMOS E. PEARCE.

1. REPLY — *Denial of New Matter.* The allegations of any appointment or authority, appearing as new matter in a reply, shall be deemed to be controverted by the adverse party as upon direct denial verified by the affidavit of the party, his agent or attorney, without the filing of any pleading.

2. PAROL EVIDENCE *to Explain Statements of Insured.* Parol evidence is admissible to show that the statements given by the insured to the agent of an insurance company were different from those he transcribed in the application he sent to the company.

3. AGENT, *Statements of — Evidence of Personal Knowledge.* The statements of an agent of an insurance company, upon the back of a blank application furnished its agents by the company, and in answer to certain printed interrogatories to such agent, are admissible in evidence to show what personal knowledge he had of the property insured at the time the application was taken.

4. AGENT, *False Statements of; Company Estopped from Denying Liability.* If, after hearing a full and truthful statement of the condition of the property insured from the owner, an agent of an insurance company fills the blanks in a printed form of application furnished him by the company with misrepresentations and false statements, and the insured signs the same without knowing its contents, and without other fault than that he relied upon the agent to write down his statement correctly, and pays the premium, obtains a policy, and sustains a loss, *held*, that the company is estopped from denying its liability under the policy; and *further held*, that the signing of the application under such circumstances will not prevent a recovery by the insured, as the transcribing such statement will be deemed to be the act of the company by its agent, and not that of the insured.

5. BLANKS, *Filled by Agent—Agent of Company, Not of Insured.* Where an agent of an insurance company soliciting insurance, in describing the property insured, falsely, and without the knowledge of the insured, fills the blanks in the printed forms of application of the company, he is the agent of the company in taking such application, and not of the insured, although there is a stipulation on the face of such application that the description of the property is made by the owner, or by his authority.

6. POLICY — *No Forfeiture, When — False Statements by Agent.* Where it is provided in a policy that the statements in an application are warranties, and if any of them are false the policy shall be void, it

is not forfeited when its own agent makes all the false statements contained in the application, and there was no fraud or attempt to deceive on the part of the assured.

## Error from Lyon District Court.

ACTION by *Pearce* against the *Insurance Company*, to recover upon a policy issued by defendant to plaintiff. The petition stated three causes of action, as follows: First, for $1,000 insurance on plaintiff's house; second, for $228.25 on personal property belonging to plaintiff; and third, for $256.50 on personal property owned by Geo. H. Edwards. Trial at the January term, 1886. The plaintiff dismissed the second and third causes of action. On the first cause of action the jury found for the plaintiff, and assessed his damages at $1,000; new trial denied defendant; judgment on the verdict for the plaintiff. *The Company* brings the case here. The material facts appear in the opinion.

*Kellogg & Sedgwick*, for plaintiff in error.
*Buck & Feighan,* for defendant in error.

Opinion by HOLT, C.: Defendant in error, as plaintiff, commenced his action in the Lyon district court, to recover the sum of $1,484.75. His petition contained three counts, but we have only the first one under consideration. In it he averred that defendant had issued to him a policy insuring him against loss by fire on a dwelling house, its contents, and a barn, and that they were accidentally destroyed by fire. The defendant in its answer alleged that the policy of insurance was issued upon plaintiff's application, which was false in its statements and representations, and which he made for the purpose of deceiving and defrauding defendant. The plaintiff in his reply says that the application was written out by the agent of defendant, who had previously made an accurate and careful examination of the premises, knew how the house was built, and had expressed himself satisfied with its condition and surroundings; and he also further set forth that the agent had full authority to waive any conditions in the ap-

plication. There was a trial by a jury, verdict for plaintiff, and judgment thereon. The defendant is plaintiff in error.

The first question that confronts us is whether the allegation, in plaintiff's reply, of agency and authority of the party taking the application, should be taken as true. Section 108 of the civil code reads as follows:

"In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, of any appointment or authority, shall be taken as true, unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

The plaintiff contends that under this section the allegations of the reply should be treated as fully proven. If we should accede to this proposition, it alone would determine this case, for the averments of the reply are a complete defense to the answer of defendant. If § 108 was the only one to consider in this matter, we would be compelled to hold that the averments of authority and agency are true, and that the party taking the application had full power to make and modify it, as completely as though the defendant itself, by its principal officers, was present. We are at a loss, however, to know how, under our code, the reply could be formally denied, for § 86 provides:

"The only pleadings allowed are: *First*, the petition by the plaintiff. *Second*, the answer or demurrer by the defendant. *Third*, the demurrer or reply by the plaintiff. *Fourth*, the demurrer by the defendant, to the reply of the plaintiff."

This section makes it plain that no pleading is allowed to a reply, save only the demurrer of defendant thereto. It was suggested to us that an affidavit, denying the truth of the allegations, might be filed. But that would not be permissible, for an affidavit is not a pleading, nor could the explicit provisions of the statute be thus evaded by filing one, and asking that it should have the force of a pleading. But § 128 of the code provides:

" . . . The allegation of new matter in the reply shall be deemed to be controverted by the adverse party, as upon direct denial or avoidance, as the case may require."

Probably the primary application of the clause, "as the case may require," may have reference to the distinction between a general denial and a plea of confession and avoidance; but we think it will not violate the spirit of the section to apply it, without reservation, to averments of authority and agency in a reply. No pleading would put in issue like allegations, unless verified by the oath of the party, his agent or attorney, and the statute provides that all allegations of the reply shall be deemed controverted by the adverse party, without the filing of any pleading.

1. Reply—new matter deemed denied.

The plaintiff makes this contention: that all allegations in a reply, except those concerning matters referred to in §108, should be considered as denied without any pleading, but those matters named in said section must be denied by a verified one. We cannot so construe the language of that portion of §128 we have quoted, especially when there is no provision of the code authorizing such a pleading. We can readily see that this construction might not always be satisfactory, and in some instances would necessitate the production of witnesses and testimony, that §108 was intended to obviate. The express provisions of the statute limiting the number of pleadings must govern, although good reasons may exist for a different rule. We think, therefore, it devolved upon the plaintiff to prove by evidence that the party taking the application had authority from the company. The testimony supporting such allegation will be considered hereafter.

The facts concerning the application are these: Plaintiff was building a house a short distance from the city of Emporia, and the agent of defendant, wishing to insure him, visited the place two or three times in his absence, and finally met him at a bank in Emporia, where the application was made. Some of the statements in the application were false. The special questions and answers that are important, and which we shall especially consider are: "Chimneys — material of same? Brick. Condition? Good. On what do they rest? Brackets. Stove-pipes — do they pass through roof or floor? No. How near wood? 12 inches. How secured? By

safe of zinc in flue, held by wire." The facts were that there was but one chimney. The kitchen stove was not supplied with a flue, but from it was a stove-pipe running up through the roof, and which was not more than three or four inches from the wood, and was secured by a safe of zinc, held by wires. When the application was taken the agent wrote down all of the answers, and read over a part of them to plaintiff, and he signed them, without knowing these answers were in the application. His testimony concerning the matter was to the effect that he told the agent taking the application about the stove-pipe; that he had rather not insure then, but wait until his house was finished; and that his preference was the "Freeport, Illinois, Company." The agent made some objection to the condition of the stove-pipe in the kitchen, and asked plaintiff to build a flue there; but he told him it was out of the question, that he never would build it, that he had always been bothered with flues to his kitchen stove. The agent then said he would a little rather have it built; but plaintiff told him if he could not insure him without the flue, he could not insure him at all. Upon the face of the application, just above the signature of the plaintiff, was the following printed stipulation:

"The foregoing is my own statement, and the questions are answered by me or by my authority, and will be assumed as my act, and the statements are warranted to be a correct description of the risk, and also a correct valuation and description of the property named, and of all incumbrances."

Upon the back of the application is a diagram, and under the head of "Questions to Solicitors" are the following: "Did you survey the risk personally? Yes. Do you fully recommend the risk? Yes.—J. A. BEALS." In the body of the policy is the following stipulation:

"This indemnity contract is based upon the representations contained in the application, of even number herewith, and which the assured has signed, and permitted to be submitted to this company, and which is made a warranty and a part hereof; and it is stipulated and agreed that if any false state-

ments are made in said application,  .  .  .  this policy shall be null and void."

In taking this application for insurance, was J. A. Beals the agent of plaintiff, or of defendant?  It is claimed that by reason of the stipulation on its face, which provided that all statements, answers and descriptions were the acts of the plaintiff, that whatever part Beals may have taken in making and filling it out, was as his agent. It must be conceded that plaintiff did not seek Beals for this work; did not even ask him to do it, and paid him nothing therefor; did not even suspect that at that time he was his agent, but did believe that he was an insurance agent, looking after the interests of the company whose advantages he was advocating to plaintiff. He was canvassing for business for the defendant; had made several trips to plaintiff's house, before he saw him, to insure it, and, against plaintiff's preference, finally induced him to insure in this company. He was supplied with its blanks, and was employed and paid by it. This application was practically the work of Beals, though the stipulation on the face thereof provides that the answers and statements were made by plaintiff, or his authority; thus attempting to · make the agent of the company the agent of the assured. The ordinary instructions of companies to their agents, and their dealings with them, are too well known for us to shut our eyes to the manner in which their work is carried on. This is but a form of words to attempt to create on paper an agency, which in fact never existed.

5. Agent of company, not of insured. It is an attempt of the company, not to restrict the powers of its own agent, but an effort to do away with that relation altogether by mere words, and to make him in the same manner the agent of the assured, when in fact such relation never existed. (*Insurance Co. v. Myers*, 55 Miss. 479.) We do not believe the entire nature and order of this well-established relation can be so completely subverted by this ingenious device of words. The real fact, as it existed, cannot be hidden in this manner; much less can it be destroyed and something that did not in reality

26 — 39 KAS.

exist be placed in its stead.    The substance is superior to the mere drapery of words with which one party wishes to bring into existence and clothe an unreal authority. (*Sullivan v. Phenix Ins. Co.*, 34 Kas. 170; *Kausal v. Mutual Ins. Co.*, 31 Minn. 17; *Insurance Co. v. Wilkinson*, 13 Wall. 222; *Protective Ins. Co. v. Harmer*, 2 Ohio St. 452; *Sprague v. Holland Ins. Co.*, 69 N. Y. 128; *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa, 253; *Gans v. St. Paul F. & M. Ins. Co.*, 43 Wis. 108; *Iron Works v. Phœnix Ins. Co.*, 25 Conn. 465; *Clarks v. Mutual Ins. Co.*, 40 N. H. 333; 2 Wood, Fire Ins., §§ 385, 388; May, Ins., § 140.)

If we take the testimony of plaintiff to be true, as evidently the jury and court did, we must believe that he made a complete and truthful statement of the condition of the house, the stove-pipe in the kitchen, the way it passed through the roof, how it was secured, etc.; and also that the agent had examined the risk, and from personal inspection and observation knew all the surroundings.    Indeed, he makes upon the back of the application his statement, as solicitor, that he had carefully examined the stove-pipes and chimneys, and after surveying the risk personally, he fully recommended it.    But the defendant contends that because he was merely a solicitor, having authority only to take and forward applications, he could not make a contract for the company, and that the statement upon the back of the application was no part of it, but simply a memorandum between the company and Beals.    It insists that *Sullivan v. Phenix Ins. Co.*, supra, is not decisive of this case, for the reason that Forbriger, the agent of the company in that case, had full power to make the contract of insurance and issue a policy without consulting the officers of the company, while in this matter Beals did not possess authority to make a contract for the company.    We believe, under the evidence, that he was simply an agent, or solicitor, as he is called, with power only to take and forward applications. Yet the company cannot relieve itself of all liability for his acts for that reason.    The company did make him its solicitor, and it must be presumed that he was given full power to take

applications, and give such information to the company as he might obtain either from the applicant or from other sources. For this purpose, at least, he was the agent of the company with full power; and if he wrote down false statements after he had been truthfully informed by the applicant, and after a personal inspection of the premises, the assured should not suffer for his misrepresentations. We will concede that the defendant believed that the statements in the application were correctly set forth in the application, and if the company had known the actual facts it would not have issued the policy, and that it was deceived by the application; but this will not relieve the company, because the deception was practiced upon it by its own agent, and not by the plaintiff. (*Donnelly v. Cedar Rapids Ins. Co.*, 70 Iowa, 693; *Germanic Ins. Co. v. McKee*, 94 Ill. 494; *Aurora Fire Ins. Co. v. Eddy*, 55 id. 213.) We are of the opinion that after the defendant had received the premium of the plaintiff, and issued him a policy, that it was estopped from denying the truth of the statement filled in by its own agent in the application of plaintiff. The knowledge that Beals possessed was, for the purposes of this action, the knowledge of the company. He was acting as its agent, and it was his especial duty to ascertain the actual facts about the risk, as the company made him its agent for that purpose. The application was good enough to secure the premium for the company; and where there was no fraud, nor intention to deceive defendant on the part of plaintiff, it ought to be held sufficient, ordinarily, to recover the losses plaintiff has sustained. After the company has received the benefits of the contract, it ought not to be permitted to escape liability by questioning the statements of its own agent, and setting up his fraud as a defense against a party who has been truthful and honest. (*Fire Ins. Co. v. West*, 76 Va. 575; *Higgins v. Phœnix Ins. Co.*, 74 N. Y. 6; *Eggleston v. Ins. Co.*, 65 Iowa, 308; *Life Ins. Co. v. Hogan*, 80 Ill. 35; *Sherman v. Ins. Co.*, 39 Wis. 104; *Patten v. Fire Ins. Co.*, 40 N. H. 375; *Breckinridge v. Ins. Co.*, 87 Mo. 62;

2. Truth told by insured—false statements by agent.

4. False statements of agent; company estopped from denying liability.

*Simmons v. Ins. Co.*, 8 W. Va. 474; *Ins. Co. v. Mahone*, 56 Miss. 180; *Thomas v. Fire Ins. Co.*, 20 Mo. App. 150; *Life Ins. Co. v. Robinson*, 98 Ill. 324; *Ins. Co. v. Lewis*, 48 Tex. 622; Berryman's Digest of Ins., 440, *et seq.*; May, Ins., § 143; 1 Wood, Fire Ins., § 143.)

The defendant further complains that the statements of Beals upon the back of the application should not have been admitted in evidence, because they form no part of the contract. Perhaps they are no part of the contract between the parties, but they had their place and importance, else the company would not have prepared its blanks in the manner it did. They were evidently statements that defendant partially relied upon. They were admissible, if for no other reason, to tend to establish the fact that Beals knew the condition of the premises; and that, making a false statement of facts within his own knowledge at the time of taking the application, it tended to show that he filled it out with a view of obtaining the premium, rather than of correctly transcribing the answers of plaintiff.

3. Evidence; agent knew condition of premises.

The defendant argues with much force that the policy itself makes the representations of plaintiff warranties, and that if they were false, then the policy should be void. This is especially important in this case, for the reason that the fire originated from the stove-pipe in the kitchen roof, about which the false statements were made. The defendant claims that plaintiff was responsible for such statements, because he signed the application after he had an opportunity to read and examine it, and having thus entered into an agreement, he should not be permitted to say that he did not sign it with full knowledge of its contents. When the application was taken, Beals handed it to plaintiff, who said: "You read it; I haven't my glasses with me," and then Beals read a part of it, but not the answers that were false. The first time plaintiff knew they were in the application he learned it from another agent of the defendant, who came to adjust the loss. The plaintiff evidently trusted to Beals to fill out the application truthfully. He was not dishonest, did not misrepresent, and did

not intend to deceive.  The only thing that he was guilty of was, that he did not read the answers that he gave to Beals to transcribe.  The dishonesty was all on the part of the agent of defendant.  He evidently was anxious to secure the premium from plaintiff, and the defendant, in order to increase its business, was willing to intrust it in his hands.  It held him out to those with whom he might deal, as an honest, truthful man.  It should be bound by his acts and representations. The agent might easily persuade himself to the belief that there was but a slight chance for the property to burn, and without a fire these false statements would never be detected. It is insisted that under such circumstances the assured should be bound by his written application, unless there was some crafty device or stratagem resorted to to prevent him from reading the application which he signed.   This is the ordinary rule in signing a written contract or stipulation; but after the payment of the premium, we are unwilling to apply it to its full extent to the system of taking applications which is now almost universally adopted by insurance companies to obtain business.  Its practical application would work injustice to the insured.  The company would secure the premiums and escape the payment of losses; and the parties who in good faith had paid it money, and believed their property insured, would find after its loss that they had been deluded.  The only fault on the part of the insured would be in relying upon the statements of the agent of the company, while the company would receive the premiums, and on the other hand, escape its liability on account of the deception of its own agent.  The current of the later authorities seems to be that the agent who takes the application and obtains the policy must be regarded for those purposes as having full power to act for and bind the company; and after having received money from the insured,

6. False statements of agent; policy, not forfeited.

it cannot be heard to say that the statements in the application were false, when there was no fraud, or attempt to deceive and misrepresent on the part of the assured.  It is true that this current is not unbroken, but we believe the better reason is in its favor,

because it would not permit the unwary to be ensnared and defrauded. (*Rowley v. Empire Ins. Co.,* 36 N. Y. 550; *Ins. Co. v. Wilkinson,* 13 Wall. 222; *Schwarzbach v. Protective Union,* 25 W. Va. 622.)

We recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.