# Charleston.

## QUARRIER, TRUSTEE *v.* PEABODY INSURANCE COMPANY

### AND

## QUARRIER, TRUSTEE *v.* ÆTNA FIRE AND MARINE INSURANCE COMPANY.

(Absent, HAYMOND, JUDGE).

Decided May 1, 1877.

1. The appearance by a corporation in a plea to the jurisdiction of the court, should not be in person or by attorney, but may be by its president.

2. The averments in such a plea, as in all other pleas, of all the material facts, should be direct and positive, and not by way of recital.

3. The averments in such a plea of the location of the principal office of the corporation and of its president's residence, should be as of the time the action was brought.

4. The proper conclusion of such a plea is whether the court can or will take further cognizance of the action, and not the action abate and be dismissed.

5. Such a plea must be certain to every intent, and all the old strictness of the common law, both as to the form and substance, is still required, and a failure of such a plea in any of the particulars above indicated would be fatal, and such defective plea should, on motion of the plaintiff, be stricken from the record.

6. The affidavit to the facts stated in such a plea should be positive, and not as the plaintiff believes.

7. In an action of *assumpsit* on a policy of insurance, it is necessary for the plaintiff to allege an interest in the property insured, which is insufficiently done by the allegation that the defendant insured the plaintiff's property.

1877.
January Term.

| | |
|---|---|
| 10 | 507 |
| 35 | 435 |
| 10 | 507 |
| 37 | 280 |
| 37 | 594 |
| 10 | 507 |
| 38 | 26 |
| 10 | 507 |
| 42 | 326 |
| 10 | 507 |
| 46 | 598 |
| 10 | 507 |
| 54 | 160 |
| 10 | 507 |
| 55 | 364 |
| 55 | 369 |
| 10 | 507 |
| 57 | 156 |
| 10 | 507 |
| 63 | 25 |
| f63 | 551 |

1877.
January Term.

Quarrier, trus-
tee,
v.
Peabody Insur-
ance Company.
And
Quarrier, trus-
tee,
v.
Ætna Fire and
Marine Insur-
ance Company

8. Such a declaration having alleged that the loss was to be paid in sixty days after proof and notice given the defendant, in the manner required by the policy, it is necessary for the declaration to allege this manner, and that such proof and notice were accordingly given. And a failure to make these allegations, or the allegation of interest, is fatal to the declaration on general demurrer.

9. In an action of assumpsit based on the adjustment of the loss caused by the fire, it is necessary to allege that the adjustment was made with the defendant, and this is insufficiently done by an allegation that it (the adjustment) was made with an agent of the defendant; and it is also necessary to allege that the defendant promised to pay the amount of such adjustment. And a failure to make such allegations is fatal to the declaration on general demurrer.

10. A provision in a policy that the assured shall recover such a portion of the loss only as the sum assured bears to the whole amount of insurance, refers to the whole amount of insurance at the time of the loss, and does not impliedly require the assured to keep up other insurances on the property which were in existence when the policy issued.

11. A policy contained a provision that if the assured should make any other insurance on the property, *or any part thereof,* or if the property should be sold or transferred, or any change should take place in the title or possession thereof, without the company's consent, the policy should be void; and also a provision that when the property has been sold or otherwise disposed of, so that all the interest on the part of the assured has ceased, the insurance on such property should terminate. HELD:

That the insurance on the entire property is not by these provisions forfeited by a sale of a portion of the property without the consent of the company.

12. A policy contained a provision that if the interest of the assured is not truly stated, or be other than the entire unconditional and sole ownership, and must be so expressed in the policy, under penalty of its forfeiture. HELD:

The policy is not rendered void by the fact that it simply describes the property as the property of the assured, and fails to mention that there was at the time the policy issued a deed of trust on the property insured, no inquiry having been made about the state of the title.

13. What does not amount to an adjustment.

14. On a demurrer to the evidence by the defendant, the facts proven sustain the case of the plaintiff, but it is so defectively stated in the declaration that the court on the demurrer to the declaration ought to have sustained the demurrer. This Court should set aside the judgment for the plaintiff, and remand the cause, with directions that the plaintiff have leave to amend his declaration, if advised so to do.

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

These cases were brought to this Court, by writs of error and *supersedeas*, allowed upon petitions of the defendants below, respectively, to judgments rendered by the circuit court of Kanawha county, on the 11th day of December, 1874.

In one of the said suits, William A. Quarrier, trustee for Mrs. D. R. Laidley, was plaintiff below, and The Peabody Insurance Company was defendant below; in the other, William A. Quarrier, trustee for Mrs. D. R. Laidley, was plaintiff below, and The Ætna Fire and Marine Insurance Company was defendant below.

GREEN, PRESIDENT, who delivered the opinion of the Court sufficiently states the cases.

The Hon. Joseph Smith, Judge of the seventh judicial circuit rendered the judgments in these cases below.

*William H. Hogeman*, for the plaintiffs in error, referred to the following authorities:

1 Phil Ev. 478; 1 Green. Ev. §212; May on Ins. §273, 277; 10 Wall., 35; 6 Rob. Pr., 68; 3 Gray 593; 2 (5, 10, N. Y.) 53; 2 Green. Ev. §404-5; 3 Phil. Ev., 235; *State Bank v. Bell*, 5 Blackf., 127; Code W. Va., ch. 125, §39; 1 R. C., 496; *Jackson v. Webster*, 6 Munf., 462; *B. & O. R. R. Co. v. Gallahue's adm'r*, 12 Gratt., 664; *Winston's ex'or v. Francisco*, 2 Wash., 187; *Sexton v. Holmes*, 3 Munf., 566; *Cooke v. Simms*, 2 Call., 39; *Wooddy v. Flournoy*, 6 Munf., 506; *Wingo v. Brown*, 12 Rich. (S. C.), 279; *Muldrows v. Tappan*, 6 Mo., 276; *McNulty v. Collins*, 7 Mo., 69; *Bruner v. Stout*, Hard. (Ky.), 225; *Benden v. Manning*, 2 N. H., 289; 4 Rob. Pr., 230; *Hartford Bank v. Hart*, 3 Day (Conn.), 493; *Mt. Sterling*

Co. v. Looney, 1 Metc. (Ky.), 530 ; McCullough v. Moss, 5 Den. (N. Y.), 567 ; Wells v. Pacific R. R. Co., 35 Mo., 164 ; St. Andrew's Bay Land Co. v. Mitchell, 4 Fla., 192 ; 2 Rob. Pr., 302 ; May on Ins., §2, 7, 8, 116, 117 ; 3 Kent's Com., 371 ; 3 Rob. Pr., 552 ; May on Ins., §587 ; Muhleman v. National Insurance Company, 6 W. Va., 518 ; McFarland & Steele v. Peabody Insurance Company, 6 W. Va., 432 ; Jewett v. Home Insurance Company, 29 Iowa, 562 ; Columbian Insurance Company v. Lawrence, 2 Pet., 53 ; Hoxie v. Home Insurance Company, 32 Conn., 40 ; 58 Pa., 444, 452 ; Security Insurance Company v. Fay, 22 Mich., 467 ; Gould v. York County Mutual Fire Insurance Company, 47 Me., 403 ; Lovejoy v. Augusta Mutual Fire Insurance Company, 45 Me., 472 ; Barnes v. Union Mutual Fire Insurance Company, 51 Me., 110 ; Trustees Fire Association v. Williamson, 26 Pa. St., 196 ; Friesmouth v. Agawam Insurance Company, 10 Cush., 587 ; Brown v. People's Insurance Company, 10 Cush., 280 ; Kimball v. Howard Insurance Company, 8 Gray, 33 ; Associated Fireman's Insurance Company v. Assum, 5 Md., 165 ; Dibol v. Minot, 9 Iowa, 403 ; Boynton v. Clinton and Essex Insurance Company, 16 Barb., 24 ; 17 Ohio St., 432 ; 2 Parsons on Con., 32 ; 1 Chitty Pl. (16 Am. Ed.), 577.

C. E. Doddridge, for defendants in error, cited the following authorities :

Code W. Va., ch. 124, p. 594–5 ; Acts 1871, ch. 43, p. 63 ; Code W. Va., ch. 125, §29 ; 2 Phillips on Ins., 480 ; May on Ins., §272, 278 ; 4 Rob. Pr., 441, 442 ; May on Ins., 319, 320 ; Osborn v. Bank of U. S., 9 Wheat, 738 ; 1 Chitty Pl., 428, 531 ; Code W. Va., 605 ; Matthew's Forms, 113, 114, 115 ; 3 Mass., 160 ; 6 Leigh, 95–6 ; 4 Rob. Pr., 230 ; 4 Hump., (Tenn.) 303 ; Bell v. Hobbs, Ga., Dec., Part. 2, 144 ; 2 Abbott. U. S. Dig., 96–97 ; Enfer v. Shaw ; 2 Wend., 567 ; Bank of Columbia v. Paterson, 7 ; Cranch, 306, 307 ; Cooke v. Simms, 2 Call, 36 ; Code W. Va., 603, §29 ; 2 Phillips on Ins., 480, 482 ; 4 Rob. Pr., 441, 442 ; May on Ins., §272, 319, 320, 278.

1877.
January Term

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Comdany

*Smith and Knight,* for defendants in error, cited the following authorities :

Code W. Va., 605, §39; Stevens' Pl., 394, 405; 1 Chitty Pl., 445, 462, 551; *Commonwealth use of Brown v. Fry, et al.,* 4 W. Va., 721; Code W. Va., 603, §28, 29; Code W. Va., 637, §3 ; 1 Rob. Pr., 404, 405 ; 2 Phillips on Ins., §2151 ; 1 (old) Rob. Pr., 351, 352 ; 5 Gratt., 364.

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

GREEN, PRESIDENT, delivered the opinion of the Court.

In the first of these causes, the plaintiff, on July 1, 1870, brought an action of *assumpsit* in the circuit court of Kanawha county, against the defendant.   The basis of the action was a policy of insurance against fire, issued by the defendant to the plaintiff, of which the following are the contents, so far as they have any bearing on this case :

"By this policy of insurance the Peabody Insurance Company, in consideration of thirty dollars, to them paid by the assured hereinafter named, the receipt whereof is hereby acknowledged, do insure William A. Quarrier, esq., trustee for Mrs. D. R. Laidley, against loss or damage by fire, to the amount of $2,000, as follows, viz: $640.00 on her two story brick metal roof building, with one story brick metal roof addition attached in rear, occupied by E. S. Arnold & Co., as a dry goods store; $140.00 on shelving, counters, furniture, fixtures, drawers, cornice, gas pipe and fixtures contained therein; $547.00 on her two-story brick metal roof building, with one-story brick metal roof addition attached in rear, occupied by Laidley & Miller, as a retail drug store; $113.00 on shelving, counters, furniture, fixtures, drawers, counters, gas pipes and fixtures contained therein ; $480.00 on her two-story brick metal roof building, with one-story brick metal roof addition attached in rear, occupied by A. H. Wilson, as a retail hardware store ; $80.00 on shelving, counters, furniture, fixtures, drawers, counters, gas pipes and fixtures contained therein, all situate no the notheast side of Kanawha

1877.
January Term.

Quarrier, trus-
tee,
v.
Peabody Insur-
ance Company.
And
Quarrier, trus-
tee,
v.
Ætna Fire and
Marine Insur-
ance Company

street between Capitol and Summers streets, in Charleston, W. Va.

"$7,000 additional insurance on buildings and fixtures elsewhere.

$2000.00.            One year.            Premium $30.00.

"And the said company hereby agree to make good unto the said assured, her executors, administrators and assigns, all such immediate loss or damage, not exceeding in amount the sum insured, as above specified, nor the interest of the assured in the property, except as herein provided, as shall happen by fire to the property specified, from the 19th day of May, 1873, at twelve o'clock at noon, to the 19th day of May, 1874, at twelve o'clock, at noon, the amount of loss or damage to be estimated according to the actual cash value of the property at the time of loss, and to be paid sixty days after due notice and proofs of the same shall have been made by the assured and received at this office, in accordance with the terms and provisions of this policy, unless the property be replaced, or the company shall have given notice of their intention to rebuild or repair the damaged premises.

*First.* If the assured shall have, or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written thereon.

*Second,* Or if the property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance without the consent of this company endorsed thereon.

*Third,* Or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in this policy.

*Fourth,* Or if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the

assured, or if the buildings insured stand on leased ground, it must be so represented to the company, and so expressed in the written part of this policy, then and in every such case this policy shall be void.

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

*Fifth.* When the property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, this insurance on such property shall immediately terminate.

*Sixth.* In case of any other insurance on the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon; and it is hereby declared and agreed that in case of the assured holding any other policy in this or any other company on the property insured, subject to the conditions of average, this policy shall be subject to average in like manner.

*Seventh.* Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the company, and as soon thereafter as possible, send a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been on the same property; giving copies of the written portion of all policies thereon; also the actual cash value of the property and their interest therein; for what purpose, and by whom the building insured, or containing the property insured, and the several parts thereof, were used at the time of the loss; when and how the fire originated, and shall also produce a certificate under the hand and seal of a magistrate or notary public (nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, nor related to the assured) stating that he has examined the circumstances attending the loss; knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured, to the

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

amount which such magistrate or notary public shall certify.

"And it is hereby understood and agreed, by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and are to be used and resorted to, in order to determine the rights and obligations of the parties hereto.

" In witness whereof, the said Peabody Insurance Company have caused these presents to be signed by their president, and attested by their secretary, in the city of Wheeling, West Virginia, this 19th day of May, 1873.

"N. C. ARTHUR, *Secretary.*

"WM. BAILEY, *President.*"

The declaration was as follows:

*In the Circuit Court of Kanawha County, West Virginia:*

Wm. A. Quarrier, trustee for Mrs. D. R. Laidley, complains of the Peabody Insurance Company, a corporation created by the laws of West Virginia, and duly organized at Wheeling, W. Va., which has been duly summoned, &c., of a plea of trespass on the case in *assumpsit,* and thereupon the said plaintiff says that heretofore, and on the 19th day of May, 1873, at Charleston, to-wit, in the county aforesaid, by a certain policy of insurance made on that day, and signed by W. B. Simpson, president, and J. R. Miller, secretary, of the said insurance company, the said company did then and thereby, in consideration of $30, to them paid by the plaintiff, the receipt whereof was acknowledged by the said policy, did insure the said plaintiff, trustee, &c., as aforesaid, against loss or damage by fire to the amount of $2,000, as follows, viz: $640 on the two-story brick metal roof building, with one-story brick metal roof addition attached in rear, occupied by E. S. Arnold & Co., as a dry goods store; $140 on shelving, counters, furniture, fixtures, drawers, cornice, gas-pipe and fixtures contained therein;

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

$547 on her two-story brick metal roof building, with one-story brick metal roof addition attached in rear, occupied by Laidley & Miller, as a retail drug store; $113 on shelving, counters, furniture, fixtures, drawers, counters, gas pipes and fixtures contained therein; $480 on her two-story brick metal-roof building, with one-story brick metal roof addition attached in rear, occupied by W. H. Wilson, as a retail hardware store; and $80 on shelving, counters, furniture, fixtures, drawers, counters, gaspipe and fixtures contained therein, all situate on the northeast side of Kanawha street, between Capitol and Summers streets, in Charleston, W. Va., there being then $7,000 additional insurance on buildings and fixtures elsewhere, $5,000 of which expired in December, 1873, without renewal; and the said company did, by the said policy, agree to make good unto the said plaintiff, his executors, administrators and assigns, all such immediate loss or damage not exceeding in amount the sum or sums insured as above specified, nor the interest of the assured in the property, except as herein provided, as shall happen by fire to the property so specified, from the 19th day of May, 1873, at twelve o'clock at noon, to the 19th day of May, 1874, at twelve o'clock at noon, the amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same shall have been given by the said plaintiff and received at the office of the said company, in accordance with the terms and provisions of said policy, unless the property should be replaced or the company should give notice of their intention to rebuild or repair the damaged premises. And thereupon, the said plaintiff further says that on the 19th day of January, 1874, the said buildings, etc., etc., so described and insured as aforesaid, were greatly damaged by fire without the fault of the said plaintiff, at and after the time of the fire, etc.; that thereupon two agents of the defendant, namely, Rodgers and Bishop, made an examination of the premises in order to fix and

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

adjust the amount of loss and damage to be paid the said plaintiff on account of said fire, and occasioned thereby, whereupon they fixed and adjusted the same at the sum of $1,495.95, which was done at Charleston, in said county, and the said company duly notified thereof at their office, to-wit: on the 9th day of February, 1874.

The said plaintiff further saith that he has hitherto conformed himself to and observed and performed all and singular the matters and things in said policy contained, and on his part to be performed and kept according to the tenor and effect, true intent and meaning of the same; yet that although the said loss and damages were so settled and adjusted as aforesaid by, &c., on the said 9th day of February, 1874, although more than sixty days have elapsed since the said adjustment of loss and damage and notice, &c., yet the said plaintiff in fact saith that the said defendant, although often requested so to do, has not yet paid the said sum of $1,495.95 or any part thereof to the said plaintiff or to the said Mrs. Laidley, nor has the property been replaced by the said defendant or any notice given of the intention of said company to rebuild or repair the damaged premises; and the said plaintiff further says that afterwards, to-wit: on the said 9th day of February, 1874, at, &c., aforesaid, the said defendant accounted with him of and concerning divers other sums of money from the said defendant to the said plaintiff before that time due and owing and then unpaid, and upon such accounting the said defendant was then and there found to be indebted to the said plaintiff in the further sum of $1,495.95, and being so found indebted, the said defendant, in consideration thereof, afterwards, to-wit: on the day and year last aforesaid at, &c., aforesaid, undertook and then and there promised the plaintiff to pay him the said last mentioned sum of money, to-wit, on the 20th day of March, 1874, or whensoever thereunto afterwards requested, and so the plaintiff says the defendant has hitherto refused and still refuses to pay him the said sums of

$1,495.95, or either of them or any part thereof to his damage $2,000.00, and therefore he sues, &c."

On the return day of the process, when this declaration was filed, the defendants filed a plea to the jurisdiction as follows:

Wm. A. Quarrier, trustee for D. R. Laidley, *v.* The Peabody Insurance Company.—In *Assumpsit.*

And now comes the defendant in the above-entitled action, and for plea thereto says that the plaintiff ought not to be permitted to further prosecute the aforesaid action in this honorable court against this defendant, because the defendant says it is a corporation created and acting under and by virtue of the laws of West Virginia, having its principal and only office and place of business in the city of Wheeling, in the county of Ohio, in said State, where also its president and other officers reside, and where also the alleged cause of action, and every part thereof sued for in the plaintiff's writ and in plaintiff's declaration alleged, if any in fact exists, arose, and this the defendant is ready to verify,·&c.

"Wherefore the defendant prays that plaintiff's aforesaid action abate and be dismissed.

"Witness the corporate name and seal of this defendant, affixed by its president.

PEABODY INSURANCE COMPANY,

. *By W. Bailey, its President.*

{ Peabody }
{ Insurance }
{ Company. }

This plea was objected to, and, on motion of the plaintiff, was stricken out by the court, and the defendant excepted to this action of the court. The defendant then demurred to the declaration, and to each count thereof, and the court overruled his demurrers. It then offered two special pleas, each of which was, on motion of the plaintiff, rejected, and the defendant filed exceptions to this action of the court. The defendant then filed pleas of *non-assmpsit* and payment, and the plaintiff replied generally to them, and issues were joined, and neither party desiring a jury, by consent the matters arising on

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v
Ætna Fire and
Marine Insurance Company

the issue joined, were submitted to the court for trial, and the evidence being heard, the court found the issues for the plaintiff, and assessed his damages at $774.14, whereupon the defendant moved to set aside the said finding and award a new trial, but court overruled his motion and entered up judgment for the plaintiff against the defendant for $774.14, so assessed, with interest thereon from the 11th day of December, 1874, the day on which the judgment was entered. The defendant filed a bill of exceptions to the refusal of the court to grant a new trial, and the evidence was all made part of the record, and he also filed a bill of exception to the rejection by the court of certain evidence. From this judgment of the court a writ of error and *supersedeas* has been taken.

The first question to be decided is, did the court err in rejecting the plea to the jurisdiction? The first objection to this plea urged is, that the defendant should have appeared by attorney. In support of which he cites Chitty's Pl., vol. 1 (7 Eng., 16 Am. Ed.) p. 577, 588, who says: "A plea by a corporation aggregate, which is incapable of personal appearance, must purport to be by attorney." And in *Osborn v. U. S. Bank*, 8 Wheat, 829, 830, Chief Justice Marshall says : " It is admitted that a corporation can only appear by attorney," and again, " a corporation, it is true, can appear only by attorney, while a natural person may appear for himself." But though thus loosely expressed, the true and full meaning of both Chitty and the Chief Justice is, that a corporation can never by itself appear in proper person. The connection in which the above language is used, shows that they did not have their attention addressed to the question whether in any case a corporation could appear by any other person than an attorney, but only to the question whether they could appear in proper person or by another. For Chitty, on page 444, vol. 1, says, " that in pleas to the jurisdiction, the appearance must be stated to have been in person." The reason of this is thus given in Bacon's

Abridgement, vol. 1, page 2: "In pleas to the jurisdiction of the court, the defendant must plead in *propria personæ*, for he cannot plead by attorney without leave of the court first had, which leave acknowledges the jurisdiction; for the attorney is the officer of the court; and if the defendant puts in a plea by an officer of the court, that plea must be supposed to have been put in by leave of the court." And though in some very ancient entries, pleas to the jurisdiction have been put in by attorneys, yet the rule that such a plea can not now be put in by attorneys, seems well established. 2 Saunder's Reports, 2 b., *Hortons & Hutton v. W. & E. Townes*, 6 Leigh, 58; *Guild v. Richardson*, 6 Pickering, 371. If then, a plea to the jurisdiction can not be by attorney, and a corporation cannot appear but by attorney, the consequence would be that a corporation could not plead at all to the jurisdiction. A result contrary to our sense of common justice. The solution of this difficulty is, that while it is necessarily true that a corporation aggregate, can not appear in any case, is *propria personæ*, and cannot in a plea to the jurisdiction appear by attorney, for in so doing it would admit the jurisdiction of the court, it may in such case appear by its president, just as an infant who could not appear in *propria personæ*, nor by attorney, must appear by *guardian*. 1 Chitty, same edition, p. 444, or rather by *guardian ad litem*. *Mockey v. Gray*, 2 Johnson, 192; 6 Dana, 108. It is true that Robinson in his Practice, vol. 5, p. 23, gives a form of a plea to the jurisdiction by a corporation in which the corporation appears by attorney; but the reason why such an appearance in a plea to the jurisdiction is faulty, applies with just as much force to an appearance by a corporation as to an appearance by a natural person. For, in either case, the appearance by attorney would admit the jurisdiction of the court; and accordingly, Robinson, in his forms of such a plea just preceding, by a natural person makes the appearance not by attorney. I conclude that the plea should have be-

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

gun: "The Peabody Insurance Company, by William Bailey, its president." The conclusion of this plea is also wrong. It ends: "That the plaintiff's aforesaid action may abate and be dismissed." It should have been: "Whether the court can or will take further cognizance of the action aforesaid." Chitty on Pleading same edition vol. 1, p. 461; Rob. Prac., vol. 5, p. 23. And though the ultimate consequence of the court sustaining the plea might be the dismissal of the suit, yet the prayer should have been for what the court would directly grant; and in such a plea such false conclusion is fatal. See *Horton & Hutton v. Townes*, 6 Leigh, 58. The affidavit to this plea is also fatally defective. It should have been positive, and not *as* affiant verily believes. It is true that in *Jackson v. Webster*, 6 Munf., 462, the court does hold such an affidavit to be sufficient to a plea of *non est factum*, but the court bases its decision expressly on the very general terms permitted to be used in this plea, "that it is not his deed," which often is rather a conclusion of law than a fact, "and no man can be required to swear positively to legal inferences." But in these pleas to the jurisdiction, the affidavit would have been to facts, and not legal inferences; and in this very case it is stated: "It is true, the affidavit could be positive as to the facts stated in the plea, or on which it is founded." The facts necessarily rest on the knowledge of the party, and according to the reasoning of this case, should have been positive. But the most obvious error in this plea is that it does not allege any one of the facts on which the defense rests, *positively*. The only fact so alleged in it is, that the defendant is a corporation, a fact utterly unnecessary to have been alleged at all. The necessary facts are none of them alleged, but only recited. This is such a violation of the fundamental rules of pleading as would, in any plea, much less a plea to the jurisdiction, be fatally defective, and that such is the case is so well known as to need no authorities to be cited to sustain the position. Some authorities on this point

may be found in the case of *Burton & Co. v. Lee & Hansford, infra.,* recognizing this well known rule of pleading. Again the necessary facts are even not recited to have existed when the action was brought, but only when the plea was filed and if they did not exist when the action was brought they would constitute no defense. The language of the plea in these respects should have been, "That the cause of said action, if any such cause there was, did not, nor did any part thereof, arise in said county of Kanawha, and the principal office of the said corporation was not, and the president, who is its chief officer, did not reside in that county at the time said action was brought, but its office and his residence were at the time and ever since have been and now are in the county of Ohio, and in the last named county, there arose the cause of action and every part thereof, if any such cause there was. 5 Rob. Prac. p. 23, 24. As pleas in abatement, including pleas to the jurisdiction, tend to delay, great accuracy and precision are required in framing them. They must be certain to every intent and without any repugnancy. And all the old strictness and precision of the common law, both as to form and substance is still required in such pleas. See *Horton & Hutton v. Townes,* 6 Leigh., 58; *May v. State Bank of North Carolina,* 2 Rob. R., 66. The plea in this case so far from being pleaded in techinical form is so bad both in substance and from that a plea in bar and much more a plea to the jurisdiction for such errors would be held bad.

The next question for consideration is, should the court have overruled the demuarer to the first count in the declaration. There is no question as to the court properly overruling the demurrer to the second count which is the common money count.

There are two objections to the first or special count, when regarded as a bond upon the policy itself and not upon the adjustment. The first is that an allegation of interest in the property assured is necessary and no proper

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

allegation of such interest is made in this count.    In England formerly it was a matter of doubt whether a policy of insurance, and especially a marine policy, was to be considered a contract of indemnity, which could only be enforced by one who had an interest in the property insured and who had sustained loss, or whether it was a contract which would be enforced whether the party had an interest in the property insured or not.    Some of the courts holding that a policy in favor of one who had no interest though it were but a wager in effect, was by the common law valid, and others holding the reverse.    The statute of 19 Geo.; 2 Chancery, 37, was passed for the purpose of declaring unlawful such wager policies, though many of the judges thought them unlawful at common law. This uncertainty and vagueness in the English decisions as to the law, naturally caused an uncertainty and vagueness in the pleadings required in suits on insurance policies. See *Nantes v. Thompson*, 2 East, 385; *Crawford v. Hunter*, 8 T. R., 14; *Rhind v. Wilkison*, 2 Taun., 238; *Condins v. Nantes*, 3 Taun., 513; *Page v. Fry*, 2 Bos. & Pul., 240; *Cohen v. Hannah*, 5 Taun., 101; 1 Eng. Com. L. R., p. 26; *Powles et al v. Grimes*, 11 M. and W., p. 10.

In this country it may be regarded as well settled that a policy of insurance against fire is a contract of indemnity against loss to the assured, by fire, and that therefore, the assured must have an interest in the property assured.    See 2 Rob. Practice, p. 302; May on Insurance, §2, 7, 117, 587; 3 Kent., 371; 2 Green. on Ev., §404; Flanders on Fire Insurance, p. 17, 376.    But though it be thus generally admitted that a policy of insurance against fire can be valid only when the assured has some interest in the property, yet owing probably to the uncertainty of the pleadings in suits on policies of insurance in England, especially marine policies, occasioned by the uncertainty of the law in reference to them, the courts in this country have in some cases allowed a vagueness or uncertainty in the allegation in the declaration of the plaintiff's interest in the property insured,

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

entirely inconsistent with the rules of correct pleading; thus in the *Rising Sun Insurance Co. v. Slaughter et al.,* 20 Ind., 526, the complaint alleged that the defendants insured "the plaintiffs to the amount of $3,000 on $10,000 bushels of oats." And the court held "that this sufficiently showed the interest of the plaintiff, not being able to perceive how the conclusion could be escaped, that the language used pointed to the plaintiffs as the owners." Surely such language does not amount in a declaration to an allegation of ownership. If such construction is to be given to the language used in pleadings utter uncertainty and confusion must follow. It violates the rule that all the essential facts necessary to sustain the plaintiff's action must be positively alleged in the declaration, and not by way of recital or inference, which rule is in full force, as appears by *Burton & Co. v. Lee & Hansford infra.* In *Fowler v. The New York Indemnity Insurance Company,* 23 Barb. 143, the complaint alleged that the defendant insured *his* water wheel and *his* building, but it was held that this was a sufficient averment of interest by a majority of the court. But this decision of the supreme court of New York was appealed from and reversed by the court of appeals of New York. See 26 N. Y., R. p. 422. And before it had been reversed it was disapproved by the supreme court itself, in *Freeman v. Fulton Fire Insurance Company,* 38 Barbour, 258, the court showing that it proceeded on a false view of the grounds of the English cases, as also on the false idea that by the common law an insurance would be valid, though the assured had no interest in the property. The current of decisions sustain the position that the declaration must allege distinctly an insurable interest, when the policy is taken out, and also when the property was destroyed or damaged by the fire, though the character of the interest need not be specified. See *Ruse v. Mutual Benefit Life Insurance Company,* 23 N. Y., 516; *Howard v. The Albany Insurance Company,* 3 Denio, 310; *Murdock v. Chenango County Mutual Insur-*

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

ance Company, 2 Comst., 210; Peabody v. Washington County Mutual Insurance Company, 20 Barb., 340; Granger v. Howard Insurance Company, 5 Wend., 202; Lane v. Maine Mutual Fire Insurance Company, 12 Maine R., 44. And this position, I think, is but reasonable. In the cases now before this Court, the declarations allege that by said policy the defendant agreed to make good to the plaintiff all such immediate loss or damages as shall happen by fire, not exceeding $2,000, and not exceeding the interest of the assured in the property insured. It was on its very face a contract of indemnity. And the declaration, according to the established rules of pleading, should have alleged that the plaintiff had an interest in the property when the policy issued and when the property was damaged by fire, and that interest was of the value of $2,000, for the contract expressly limited the amount of the responsibility of the defendant to the amount of the interest of the plaintiff in the property insured. The entire failure of the plaintiff to make such allegations renders the first count of the declaration faulty, the allegation that the defendant insured his house is an insufficient allegation of this interest, and the more obviously so as it is not alleged, even in this way, that the furniture, fixtures, &c., in the houses which were also insured, were his. But this is not the only fatal defect in this count, regarding it as a special count on the policy and not on the adjustment. The declarations alleged that the amount of damages to be paid by the defendant was "to be paid sixty days after due notice and proofs of the same shall have been given by the plaintiff and received at the office of the defendant, in accordance with the terms and provisions of said policy." But this declaration entirely fails to allege that such proof of the loss, made in accordance with the terms and provisions of the policy has ever been furnished. Nor is there in the declaration any alligation showing what the terms and provisions of the policy regulating this proof are, though the declaration

states that there are in the policy terms and provisions regulating this proof. The declaration was, therefore, bound to set forth these terms and provisions, and to allege that the proofs had been made and furnished the defendant as provided for in these terms and provisions. See *Simmons v. Insurance Co.*, 8 W. Va., 474. The failure to make these allegations amounts to a failure to show that the plaintiff had, when he instituted his suit, any cause of action, as such cause did not arise till sixty days after proofs made out, as these provisions of the policy required, had been furnished the defendant. There is an allegation of notice to the defendants of what the plaintiff calls an adjustment. But none whatever of this proof being furnished the company, in the manner required by the terms of the policy, and what the plaintiff calls an adjustment, and of which notice was given, was no adjustment, as I shall presently show.

But the plaintiff insists that this first count of the declaration was not intended as a special count on the policy, but as a count based upon the adjustment only, and that the setting forth of the policy was only to lay a foundation for the allegation of the adjustment, and might, therefore, be loose and general; and that this count should be regarded as based on this adjustment only, and not upon the policy. It is probable the circuit court took this view of the character of this first count. But to me it seems impossible to treat this first count as based upon the alleged adjustment. If it could be so regarded, the count would be utterly defective in all the material allegations necessary to base a count upon an adjustment. The proper allegations in such a count would have been "that after such fire, to-wit: on the 9th day of February, 1874, the defendant accounted to and with the plaintiff, of and concerning the amount of damages to be paid by the defendant to the plaintiff by virtue of said policy, said fire, and said loss to the plaintiff thereby, and upon such accounting the said damages were adjusted and the said defendant found indebted on

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

that account to said plaintiff in the sum of $1,495.95 ; and being so indebted, the said defendant afterwards to-wit: on the day and year last aforesaid in consideration thereof, then and there, promised to pay to the said plaintiff, the last mentioned sum of $1,495.95 on, &c. Yet, the said defendant, though often requested, has refused, and still doth refuse to pay the same or any part thereof to said plaintiff."

The mere setting out in form the allegations necessary to be made to sustain a count based on this adjustment would itself seem to be a sufficient refutation of any pretense that the first count in this declaration can be regarded as a count on the alleged adjustment, or that this first count is equivalent to a count in the above form. Scarcely one of the many necessary allegations in the last form are really contained in the first count of this declaration. This first count contains no allegation which can be regarded as the equivalent of an accounting together of the plaintiff and the defendant. The allegation that the agents of the defendant fixed and adjusted the matter is no allegation that the defendant did anything. At most it is mere evidence from which it might be inferred that the defendant did make an adjustment, and it is very insufficient evidence at any rate for there is no allegation that these agents were authorized to perform this particular duty. And in pleading the defendant himself should be alleged to have done the act which is to make him chargeable. See *Wells v. Pacific R. R. Co.*, 35, Mo., 164. But if this had been alleged to have been done by the defendant directly it would have been insufficient for several obvious reasons, the accounting or adjustment ought formally to have been alleged to have been made with the plaintiff, but this might be regarded as a legal inference from what is stated, and would not have been a fatal defect. But the adjustment is not in this count alleged to be of the damages to be paid to the plaintiff, on account of the fire, *by the defendant*, but merely of the loss and dam-

ages to be paid to the plaintiff, it may be, as in point of fact it was, to be paid by the defendant and various other parties. Then there is in this count nothing whatever to show that the defendant ever agreed to this adjustment, though it is stated he was notified thereof, much less that he undertook and promised to pay the plaintiff the amount of this adjustment; and without such *assumpsit* is alleged, an action of *assumpsit* would not lie, for this is the very gravamen of the action. *Winston's ex'or v. Francisco*, 2 Wash., 187; *Sexton v. Holmes*, 3 Munf., 566; *Cooke v. Simms*, 2 Call., 47; *Woody v. Flournoy*, 6 Munf., 506; *Wingo v. Brown*, 12 Rich. (S. C.), 279; *Muldrow v. Tappan*, 6 Mo., 276; *McNulty v. Collins*, 7 Mo., 69; and *Burton & Co. v. Hansford*, decided at the present term of this Court, and in which these Virginia cases are reviewed.

The recital of the policy whereby the defendant promised to pay the damages which the plaintiff sustained by this fire, could not justify or sustain an action of *assumpsit* for the amount of this adjustment; to sustain such action, there must have been alleged a promise other than that contained in the recital of the policy. This is directly shown by the above cited West Virginia case and Virginia cases. The demurrer, therefore, to this first count in the declaration, ought to have been sustained.

I will now consider the defense set up by the several pleas offered by the defendant and rejected by the court. I shall merely consider the facts set forth in them, and the extent to which, if properly pleaded, they are defenses to the plaintiff's action, or any part thereof. The forms of these pleas need not be considered, as when this case is remanded to the circuit court, as it must be, and a new count in the declaration filed in lieu of this defective count, the form of the pleas must be made to suit the new declaration. The first special plea states that at the time of issuing said policy, there had been taken out policies of insurance in other companies to the

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.

And

Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

amount of $7,000, making, with defendant's insurance in all, an insurance on said property amounting to $9,000. And it claims that by virtue of the provisions in said policy above recited, and numbered six, the defendant was bound to pay but wo-ninths of the damages to said property resulting from said loss. This plea does not state *that at the time the fire happened* there were $7,000 of insurance in other companies, had there been such allegation there is no question that by virtue of this provision in the policy numbered six, the plaintiff would have been bound to pay but two-ninths of the loss. But it states that this was the case *when the policy issued.* The real question raised by this plea is, was the defendant bound to keep up the insurances in other companies, so as to relieve the defendant by dividing the losses among all the companies according to said provision number six. There is certainly in this provision standing by itself, nothing imposing any such obligation on the plaintiff. It simply provides for a ratable division of losses among all companies who have insurance on the property, of course at the time the losses occur. Nor is there anything either in the spirit of this provision or in the reason for which it was inserted, that will countenance the construction sought to be put upon it by the defendant. The object of it was evidently to prevent the plaintiff, the assured, from recovering from all the companies combined, in which he might have insurances more than his entire loss, and thus remove any temptation from the assured to destroy his property by setting it on fire. And if the defendant had introduced into his plea other provisions of the policy, it would not have furnished him any aid in putting the construction he seeks upon it. Thus the provision numbered two above, provides that the assured shall not without the consent of the defendant, increase the assurance on the property, making it apparent that even this division of losses among all the companies having insurances on the property when a fire occurs, was not regarded by the

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

defendant as a sufficient inducement to permit the assured to increase this assurance according to his own pleasure, the defendant evidently regarded that its risk of loss would be so much increased by an increase of the insurance beyond the value of the property, that the provision dividing the losses among all the insurance companies, would not compensate for this increased risk, and it, therefore, prohibited further insurance of the property without its consent. The policy shows that when issued, the defendants knew there were $7,000 of additional insurance on the property. Had they desired it kept up by the assured, they would or should have inserted some provision in the policy requiring him to do so. As it is, the policy left it entirely to his discretion forbidding him to increase it without their consent. They knew that if it was not kept up while the amount they would have to pay would be larger, yet the probability of their being called on to pay any would be less, and with this they seemed content. The court, therefore, properly rejected this plea and disregarded this claim on the trial of the case.

The remaining special plea rejected by the court alleges that the plaintiff, without the knowledge or consent of the defendant, after the issuing of said policy, and before said fire, did sell and transfer by deed a *portion* of said property to one Arnold, and on the trial of the case the court excluded the deed to Arnold as evidence, having then before it the whole policy. The defendant insists by this plea that under the provision of said policy, numbered two above, the sale of a portion of the property insured without the consent of the defendant rendered void the whole policy. He interprets this provision as prohibiting under the penalty of forfeiture of the insurance a sale without its consent of *any portion* of the property insured. Admitting for the present that this provision did prohibit the sale of any *portion* of the property insured without the consent of the company, the enquiry is did such a sale operate as a forfeiture

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

of any portion of the insurance and if so how much. The defendant insists that the policy is an entire contract and consequently if by a breach of any provision of the contract any forfeiture has been incurred by the assured, such forfeiture must necessarily be of the entire insurance. It is often a question of great difficulty to determine whether a contract is entire or separable. In construeing a contract to determine this question, we are to be guided by a respect to general convenience and equity and by the good sense and reasonableness of either construction in the particular case rather than by any inflexible rules or by an unreasonble adherence to the words of the contract in disregard of its spirit. *Philadelphia, Wilmington & Baltimore Railroad Company v. Howard,* 13 Howard, 340; *Rodeman v. Hazlehurst,* 9 Gill., 294; *Dibold & Plant v. Minot,* 9 Iowa, 403; Smith's Leading Cases, vol. 1, p. 42; *Brown v. Vinel,* 3 Md., 533. As a general rule where the consideration paid, or to be paid is entire, the contract should be held to be entire, though the subject of it should consist of separate and independent items; but when the price to be paid is apportioned to separate and distinct items the contract should be construed as severable. *Withers v. Reynolds,* 2 Barn. & Adol., 882; *Miner v. Bradley,* 22 Pick., 457; *Cunningham v. Morrell,* 10 Johns., 203; *Dibold & Plant v. Mirott,* 9 Iowa, 403. A policy of insurance is a contract so different from those in which these general rules have been laid down, that it is doubtful whether they can be applied to this peculiar contract, or in what manner the application of them should be made. Instead, therefore, of resorting to these rules, which are just and reasonable in ordinary contracts in ascertaining whether a policy is to be interpreted as entire or separable, it seems to me that it is safer to apply to the general principle before announced, that in ascertaining the character of the policy in this respect, that the courts should be guided by a respect to general convenience and

equity, and by the good sense and reasonableness of either construction, bearing in mind that " the law leans strongly against forfeiture, and it is incumbent on the party who seeks to enforce one, to show plainly his right to it." *Philadelphia and Wilmington Railroad Company v. Howard*, 13 Howard, 340, and that a policy being a contract dictated by the insurance company should be construed most strongly against it. *Bryan v. Peabody Insurance Company*, 8 W. Va., 605. Applying this general principle to the case before us, I am inclined to think that, even if the policy could be construed to impose a forfeiture for an alienation, without the consent of the company, of any portion of the property insured, that such forfeiture could not extend beyond the insurance of the property mentioned in the policy as separately insured, of which the property so sold constituted a portion, if indeed it should be extended beyond the forfeiture of the insurance on the specific property sold. That a sale, for instance, of any portion of the fixtures or furniture in the Arnold storehouse could at most only operate as a forfeiture of the $140 insurance on such furniture and fixtures, and would not operate as a forfeiture of the $547 insurance on Laidley & Miller's store, or on any other property separately insured in the policy. This conclusion is sustained by highly respectable authority. It is true there are some high authorities inconsistent with this conclusion, but many of the authorities supposed to be inconsistent with this view are only so seemingly, and when examined, will be found not to militate against this conclusion. All the authorities agree that if, instead of reciting an entire consideration of $30, for the insurance, a separate consideration for each of the six insurances named in the policy had been recited, that the contract should be interpreted as separable, and that then clearly a forfeiture of the policy, by sale or otherwise, would be interpreted as a forfeiture of so much of the policy as included the property sold. That in such case the policy ought to be construed as six

1877.
January Term.

Quarrier, trustee,
v
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company.

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

several policies included in one contract, and that the insurance arising from any one of them might be forfeited without in any manner affecting any of the others. And it does seem to me unreasonable to hold that the mere recital of the entire consideration together should change the interpretation, and subject to forfeiture the six separate insurances, because a portion of the property named in one of them had been sold; especially as it is obvious that this sale of a portion of the property named in one of the insurances could in no manner tend to the prejudice or injury of the company so far as the other five separate insurances were concerned. Such construction seems to me both unreasonable and contrary to the real meaning of the parties to the contracts. When they declared the policy forfeited by the sale of any portion of the property assured, (supposing that to be the true meaning), they ought to be understood as meaning the policy so far as it insured the property, a portion of which was sold. In the contemplation of the parties, this policy included six separate policies of insurance, and that by the forfeiture of the policy was meant of that particular one of the six policies as to which there had been a violation of this provision prohibiting alienation. Many of the authorities which are apparently inconsistent with this conclusion, are not really so. Thus in numerous cases where, in Mutual insurance companies, one premium note was taken for several insurances on different buildings or other property contained in one policy, and by the policy this premium note was a lien on all the several buildings or other property named in the policy then, where there has been a misrepresentation of the amount of the liens on any one of the buildings or other property declared by the policy, to be a forfeiture, it has been held that this is a forfeiture of the entire policy, though in it there was a separate valuation and insurance on each separate building. *Gould v. York County Mutual Fire Insurance Co.,* 47 Maine, 403; *Lovejoy v. Augusta Mutual Fire Insurance*

1877.
January Term.

Quarrier, trus-
tee,
v.
Peabody Insur-
ance Company.
And
Quarrier, trus-
tee,
v.
Ætna Fire and
Marine Insur-
ance Company

*Co.*, 45 Maine, 472; *Brown v. Peoples' Mutual Insurance Co.*, 11 Cush., 280; *Friesmuth v. Agawam Fire Insurance Co.*, 10 Cush., 587.

These decisions are clearly right, not as I think merely because the consideration recited was entire, but because the entire consideration as represented by the premium notes was a lien on all the property named in the policy, and a misrepresentation of the incumbrances upon any one piece of property diminished the companies security for the premium due on the separate insurance of the other property included in the policy, but the title of which was not misrepresented. The same has been held properly to be the law in similar cases where the forfeiture was produced by a sale of a portion of the property separately insured, the premium note being a lien on the entire property in the policy. *Barnes v. The Union Mutual Fire Insurance Co.*, 51 Maine, 111.

It has been held that where two buildings were closely connected together, and the policy contained a separate insurance on each one for an entire consideration, though it did not appear that this consideration was unpaid, and a lien on both buildings, yet if one building is used for a forbidden purpose, it will avoid the entire policy. *Lee v. Howard Fire Insurance Company*, 3 Gray, 583; *Fire Association v. Williamson*, 26 Pa. St. R., 196. These decisions, though not sustainable if the two insurances in the one policy were regarded as though in separate policies, yet it would not follow from them that if the cause of the forfeiture did not in any way increase the risk on the other building, as in the case of a sale of one, that both insurances would be forfeited. And in the last case above cited, the court seems to base its decision specially on the fact that both buildings were destroyed through an explosion, in one of them, of gunpowder, kept in it in violation of the policy. In *Gottsman v. Pennsylvania Insurance Company*, 56 Pa. St. R., 210, the court went further, and held that if the consideration recited in the policy was entire, though it was fixed at one and one-half

1877.
January Term.

Quarrier, trustee.
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

per cent on the property insured, and there was a separate amount insured on a hotel and on the liquors in the hotel, if there was a misrepresentation which avoided the insurance on the hotel, there could be no recovery on the insurance on the liquors, the contract being held to be entire. The court refers to the Massachusetts cases above quoted, and does not seem to notice that most of them were based on the fact that the premium notes were a lien on all the property insured in the policies. It admits the harshness of the case, but holds that it is but carrying out the contract made by the parties. It seems to me this contract was not correctly construed by the court, especially as it stated that the premium was one and one-half per cent of the insurance, which, it seems to me, might well be regarded as fixing this per cent on the value of the liquor as the portion of the premium to be paid for the insurance on the liquor, which, had it been expressly done, the court admits would have made it a separable insurance, and it might then have been recovered, though the other insurance was void.

In the case of *The Associated Fire Insurance Co. v. Assum*, 5 Md., 165, a majority of the court held that a policy of insurance, "to the amount of $1,000, say $700 on stock of books and stationery and $300 on music, musical instruments, fancy goods and medicines," was an entire contract; but Judge Mason dissented and was of opinion that this constituted two distinct and separate insurances. I presume it all constituted together one stock of goods and this decision may not perhaps apply where there were two different stores and stocks of goods. But in opposition to these views are high authorities. In the *Phœnix Insurance Co. v. Lawrence et al.* the company, for the consideration of $14, insured Lawrence & Co., against loss by fire for one year, "to the amount of $200 on their frame storehouse and $1,200 on their stock of goods in said storehouse," and the court held though the policy was void as an insurance on the house it not being owned by the assured,

1877.
January Term.

Quarrier, trus-
tee,
v.
Peabody Insur-
ance Company.
And
Quarrier, trus-
tee,
v.
Ætna Fire and
Marine Insur-
ance Company

yet the insurance on the stock of goods was not, therefore, void, the court saying that, "we see no reason for excepting this case from the general rule by which a policy making separate insurances upon several subjects is treated as separate policies would be. So in *Lockner & Co. v. Holmes Mutual Insurance Co.*, 17 Mo., (2 Bennet), 247, it was held that a policy upon a house and its furniture seperately appraised, though void as to the house because the insured failed to give notice of an incumbrance, was not, therefore, void as to the furniture which decision was affirmed in 19 Mo., 628. And in *Clark v. New England Mutual Fire Insurance Co.*, 6 Cush., 342, the exact facts of which are stated in May on Insurance p. 303, note, the company for $5 in cash and a deposit note of $371, insured Clark for $2,500, $2,000 on his tavern house and $500 on his shop. The shop was sold and by a provision in the policy, the policy thereby became void. The court held, "that the shop was valued separately and was insured separately, as a separate, distinct and independent subject of insurance, though insured in the same policy, The alienation of the shop would avoid the policy *pro tanto* and only *pro tanto*. The tavernhouse and shop being insured separately, the alienation of one would no more affect the insurance on the other than if they had been insured in separate policies." This dicision is inconsistent with other Massachusetts cases above referred to, but though some of them are of more recent date, yet they do not overrule this case, or even make a reference to it. This fact seems to me to subtract from the weight which might otherwise be attached to these Massachusetts cases.

I am, therefore, inclined to the opinion, that if this policy had provided for it being void if any *portion* of the property assured was alienated by the assured, with out the consent of the company, the sale of the Arnold building would not have avoided the insurance on either of the other buildings, or on their fixtures, or furniture. And it might be even questioned whether it would have

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and
Marine Insurance Company

even rendered void the insurance on the furniture in the Arnold store. On this subject, May in his work on Insurance, p. 303, 304, says: "Upon principle, it does not seem to be of any consequence whether the valuation be separate and distinct, or not. Surely a merchant who insures his store and stock in trade, or a farmer who insures his barn and contents, may recover for the unsold balance of his stock, notwithstanding he daily sells a portion of it. The diminution of insurable interest coincides with a diminution of the right to claim for loss, and relatively there is no change in the situation. To say that the policy is thereby *pro tanto* avoided, is not so correct an expression as that the amount which the insured would have a right to recover under it is *pro tanto* reduced. Nor will the result be different, though it be stipulated, that the policy is to be void upon the sale of the whole *or any part* of the property insured. Nothing short of a sale of the whole will deprive the assured of his right to recover at all. If he sells part, he merely forfeits his right to claim for the loss of that part, and for the simple and obvious reason that, having sold it prior to the fire, he did not, and he could not lose it. But if he keeps up his stock, he recovers to the full amount." And as sustaining him in this reasoning, he refers to *Lane v. Maine Mutual Fire Insurance Co.*, 3 Fairf. (Me.) 44; *Hobbs & Hobbs, et al. v. Memphis Insurance Co.*, 1 Sneed., (Tenn.) 444, and *Wolf v. Security Fire Insurance Co.*, 39 N. Y., 49.

It is unneccessary to express any opinion upon the soundness or unsoundness of this reasoning as the evidence shows that the plaintiff in this case does not claim anything for loss of furniture in the Arnold store; nor is it necessary to decide in this case what would have been the effect of the policy, providing that it should be void if any part of the property insured was sold without the consent of the company. For, as I interpret the provisions of the policy, it does not provide for the policy being void, unless the whole of the property insured

is sold. The language of the provision relied upon as avoiding the policy being the provisions above recited and numbered two, is: "If the property be sold without the consent of the company endorsed on the policy, then in such case this policy shall be void."

This court in the case of *Bryan v. Peabody Insurance Company*, 8 W. Va., 605, had before it the construction of this provision in a policy of insurance: "If the above mentioned premises shall become vacant, or unoccupied, and so remain for more than thirty days, without notice to, and consent of this company in writing, this policy shall be void." This court held that this provision "must be construed to mean and apply to the whole or entire premises, and not merely to a part thereof. Had the company intended otherwise, it is reasonable to have supposed it would have so declared. It would not have contented itself with the general and comprehensive expression 'above mentioned premises,' but would have manifested its meaning and intention in common and plain language, such as *'above mentioned premises or any part thereof.'*" Thus impressed, the court held that the assured did not violate his contract in not giving notice of the vacating of a part of the premises, "although it might be true that the vacation of the part of the premises increased the risk." It would have been much less unreasonable to have construed this provision as violated by a vacation of a part of the premises than to construe the provision now under consideration to be violated by a sale of a part of the property. For what is prohibited under penalty of a forfeiture of the policy is a sale of the property, and not a sale of the property, or any part thereof; and the omission of the words, "or any part thereof," is made the more striking by these words, "the property hereby insured, or any part thereof," being used in the provision numbered one, just preceding; and that it was not intended that the entire policy should be avoided by a partial sale, is clearly manifested by the provisions in the said policy, num-

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

bered above as five, which provides that the policy shall immediately terminate when the property has been sold and delivered, or otherwise be disposed of, *so that all interest on the part of the assured in it has ceased,* clearly implying that the policy should not terminate or be rendered void by any sale which did not produce the effect of causing all interest on the part of the assured in the property to cease. So construing the policy, I hold that the sale of the Arnold store did not avoid the insurance of the other two stores, their fixtures and furniture; and the circuit court, on the trial, did not err in so interpreting this policy.

In the other case of William A. Quarrier, trustee of Mrs. D. R. Laidley, *v.* The Ætna Fire and Marine Insurance Company, of Wheeling, the suit was brought on a policy identical with that of the Peabody Insurance Company. The declaration and pleadings were the same, the same objections were made to the pleas offered, and the same action taken by the court on the demurrer to the declaration and upon the pleas, and the same exceptions filed, but in this case a third special plea was offered and rejected. This plea alleged that the plaintiff heretofore, to-wit: on the 19th day of May, 1873, executed and delivered, without the knowledge or consent of the defendant, a deed conveying a part of the real estate, with one of the buildings insured thereon, it being one of the buildings injured by the fire, to one Joel S. Quarrier, in trust, to secure certain indebtedness. This, the plea alleges, avoids the policy, by reason of a provision in it that in case of any false representation by the assured of the condition, situation, or occupancy of the property insured, or any omission to make known every fact material to the risk, or any misrepresentation whatever, or if the interest of the assured in the property be not truly stated in the policy, then the policy shall be void; and also by reason of the provisions in said policy before cited and numbered two and four. The plea is defective in not alleging whether the deed of

trust was executed before or after the policy was executed and which particular provision of the policy was thereby violated, but disregarding its form, it presented no real defense; if the deed of trust was executed after the policy, it did not violate the provision numbered three, for it was not a sale of the property, or any change of the title within the true meaning of this provision. For it has been often decided that a mortgage or deed of trust, before its foreclosure, is no alienation or change of title according to the true interpretation of these words when used in a policy of insurance. See *Shepherd v. Union Mutual Fire Insurance Company*, 38 N. H., 232; *Fulsom v. Belknap County Mutual Fire Insurance Company*, 10 Fost. (N. H.), 231; *Howard Insurance Company v. Bruner*, 23 Pa. St. (11 Harris), 50; *Jackson v. Massachusetts Mutual Fire Insurance Company*, 23 Pick. (Mass.), 418; *Conover v. Mutual Insurance Company of Albany*, 3 Denio (N. Y.), 254; *Tittemore v. Vermont Mutual Insurance Company*, 20 Vermont, 546; same case, 1 Comstock (N. Y.), 290; *Pollard v. Sommerset Mutual Fire Insurance Company*, 42 Me., 221; *Smith v. Monmouth Mutual Fire Insurance Company*, 50 Me., 96; *Dutton v. New England Mutual Fire Insurance Company*, 9 Fost. (N. H.), 153; *Rollins v. Columbian Mutual Fire Insurance Company*, 5 Fost. (N. H.), 200; *Rice et al. v. Tower & Trust*, 1 Gray, 426; May on Insurance, p. 294. It is true that the contrary doctrine has been held in Indiana, in the case of *McCulloch v. Indiana Mutual Fire Insurance Company*, 8 Blackf., 50, and *Indiana Mutual Fire Insurance Company v. Coquillard*, 2 Carter (Ind.), 645; and also in *Western Massachusetts Insurance Company v. Riker, et al*, 10 Mich., 279.

But these decision ought not to be regarded as rendering even doubtful the propriety of the conclusion that a deed of trust is neither a sale or change of title such as was contemplated by the provisions of the policy when it declared that a sale or change of title should render void the policy. If the company had in-

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

1877.
January Term.

Quarrier, trus-
tee,
v.
Peabody Insur-
ance Company.
And
Quarrier, tres-
tee,
v.
Ætna Fire and
Marine Insur-
ance Company

tended that a deed of trust should have this effect they should have so provided. If that was their purpose they have not used appropriate language to express such purpose. They have, to say the least, left it in doubt. And a contract should be avoided only by clear language and never by doubtful phrases. If the deed of trust was executed before the policy, does the fact that it was not made known to the company render the policy void? It is not alleged that there was any misrepresentation nor has there been any omission to make known any fact material to the risk. If, as we have seen, the company permitted the assured to execute any deeds of trust he chose after the policy had been issued, as we have seen they did, is this not conclusive that they did not consider the giving of a deed of trust, by the assured, materially increased their risk, and therefore the failure to notify them, when the policy was issued, that a prior deed of trust had been given, cannot be regarded as an omission to make known a fact material to the risk ; nor can it be said that the interest of the assured in the property was not truly stated in the policy. It simply states that the property is his; and there being a lien upon it, did not prevent it from being his nor render this statement untrue. We have seen that the policy itself shows that the company regarded the existence of such lien as not materially effecting the risk and unless they inquired particularly into the title of the property, a general statement by the assured that the property was his is sufficient. See Flanders Fire Insurance, p. 372, 373; *Strong .v Manufacturing Insurance Co.*, p. 10; Pick., 40 ; May on Insurance, p. 310; *Cumberland Valley Mutual Pro. Co. v. Mitchell*, 48 Pa. St. R., 374. We conclude, therefore, that the court did not err in rejecting this third plea. The only remaining question is, did the facts proven justify the court in finding for the plaintiff. In the case of Quarrier, v. The Peabody Insurance Co., by consent, the case was submitted to the court instead of to a jury. All the facts have been certified, and the second count in

the declaration was not, I think, sustained by the evidence. This count could have been sustained only by the evidence proving an adjustment of the loss to be paid by the defendant—that is, a mutual agreement as to the amount of the loss for which the defendant should be responsible. Such mutual agreement is not shown by the evidence. It is true, the plaintiff's witnesses do prove, in general terms, that the agents of the defendant, Rodgers and Bishop, did adjust with the agent of the plaintiff, A. R. Laidley, the loss at $1,495.95, but at the same time. they say that this adjustment was reduced to writing, and the plaintiff produced this writing; and on its face it shows that no adjustment was ever made, and that all that was done was that the defendant's agents made out a statement of the entire loss, which they stated at $1,495.95; and they further stated that of this loss, the Peabody Insurance Company was to pay $332.43½, the Ætna Company a like sum, leaving a balance to be paid by the other insurance companies, or not to be paid at all. To this was added a statement of what the plaintiff claimed, that is, $747.97½ of each of these companies. And at the foot of this paper, which was headed "Adjustment of Insurance," the agent of the plaintiff added a note, explaining the ground of his claim; that is, that the other insurances had expired before the fire, so that there was then but these two insurances of $2,000 each on the property. (See this paper on the next page.)

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Querrier, trustee,
v.
Ætna Fire and Marine Insurance Company

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

## ADJUSTMENT OF INSURANCE.

| | Amount of Insurance. | Insures Wilson. | Pays on Building. | Ins. counters, &c. | Pays. | Insures Laidley & Miller. | Pays. | Ins. counters, &c. | Pays. | Insures Arnold Building. | Pays. | Ins. counters, &c. | Pays - Total. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ætna...... | $2000 00 | 480 00 | 151 32½ | 80 00 | 68 88½ | 547 00 | 80 00 | 113 00 | 32 22½ | 640 00 | ...... | 140 00 | 332 43¾ |
| Peabody.... | 2000 00 | 480 00 | 151 32½ | 80 00 | 68 88½ | 547 00 | 80 00 | 113 00 | 32 22½ | 640 00 | ...... | 140 00 | 332 43¾ |
| See Memo. other In. | 5000 00 | 1200 00 | 378 30 | 200 00 | 172 22½ | 1367 50 | 200 00 | 282 50 | 80 55 | 1600 | ...... | 350 00 | 831 08¾ |
| | | 2160 00 | 680 95 | 360 00 | 310 00 | 2461 50 | 360 00 | 508 50 | 145 00 | 2880 00 | | 630 00 | 1495 95 |
| Claims of Ætna...... | 2000 00 | 480 00 | 340 47½ | 80 00 | 80 00 | 547 00 | 180 00 | 113 00 | 72 50 | 640 00 | ...... | 140 00 | 747 97½ |
| " Peabody... | 2000 00 | 480 00 | 340 47½ | 80 00 | 80 00 | 547 00 | 180 00 | 113 00 | 72 50 | 640 00 | | 140 00 | 747 97½ |

The other insurance expired on the 2d December, so there was no insurance except the $2,000 in each of the above companies.

A. T. LAIDLEY.

1877.
January Term.

Quarrier, trustee,
Peabody Insurance Company.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

The defendant's witnesses proved that when this alleged adjustment was made, the defendant's agents did fix the entire amount of the loss at $1,495.95, and upon this as a basis, they estimated the liability of the defendant at two-ninths thereof, or $332.48⅓, which is what they thought the defendant ought to pay, but the plaintiff's agent would not agree to this, but claimed that one half of this $1,495.95, or $747.97½, should be paid by the defendant, because the other insurances having expired before the fire, the plaintiffs' agent claimed that these two companies should pay the whole loss. The truth of this controversy existing at that time is abundantly shown by examining this alleged adjustment. The general language, used by plaintiff's witness, that an adjustment had been made of this loss at $1,495.95, must be understood not as an agreement by the defendant to pay that sum, but that this sum was agreed to be the entire loss, and, therefore, the basis of an adjustment. The paper made out at the time shows that while the parties did agree upon this $1,495.95 as the total amount of loss, they did not agree what portion of it should be paid by the defendant, the one side contending that only two-ninths of it was due from the defendant, and the other that one-half of it was so due. The defendant afterwards made a formal tender of this two-ninths of $1,495.95, which the plaintiff refused, and brought this suit. I think, therefore, it is clear that the evidence showed no adjustment, and that on the general count in the declaration the law was for the defendant, and if it had been the only count, the issues should have been found for the defendant. But on the first or special count, the evidence fully sustained the plaintiff's case. All the facts alleged in it, or which should have been alleged in it, were clearly proven, except that no direct evidence was offered to prove the plaintiff's interest in the property, but this was sufficiently proven by the production of the policy, which, on its face, stated that the property was his. It being thus shown that the prop-

1877.
January Term.

Quarrier, trustee,
v.
Peabody Insurance Compauy.
And
Quarrier, trustee,
v.
Ætna Fire and Marine Insurance Company

erty was his when the policy issued, the court was justified, in the absence of any proof to the contrary, in drawing the inference that this property had had been disposed of, in holding that it was still the plaintiff's property at the time of the fire. In the case of Quarrier v. The Ætna Fire and Marine Insurance Company, of Wheeling, the evidence was substantially the same, except that in that case the agency of Rodgers and Bishop to bind the defendant by an adjustment was disputed, which it was not in the other case. This case was submitted to the court on a demurrer to the evidence filed by the defendant. For reasons already stated, the finding of the court was right, the evidence sustaining the first count in the declaration, but not sustaining the second count. Nor should this finding have been different if all the evidence offered by the defendant, some of which was rejected, had been received. This rejected evidence being offered to sustain the rejected pleas, I have not deemed it necessary to consider the question as to what effect the conduct of the defendant or its agents in either of these cases should have, if any, as a waiver of any of the provisions of the policies. For without any waiver, the facts proven show that they are liable for the amount found against them, respectively. Nor is it necessary to indicate what portion of the evidence rejected by the court ought to have been received. The views of the legal rights of the parties above given will guide the court below in the admission and rejection of evidence, and no real difficulty can occur in the admission and rejection of evidence when these cases are again tried after the settlement of the law which is to govern in their trial. If the first count in the declaration had been correctly drawn, and all the necessary allegations made in it to give the plaintiff a right of action, the judgment rendered by the circuit court ought to be affirmed. But this not being the case, and the evidence in these cases not sustaining the second counts in the declarations, the judgments rendered by the circuit court

in each of these cases in favor of the plaintiff, must be reversed and annulled, and the appellant must recover of the appellees in each of these cases his costs, expended in this court, and the court proceeding to render such judgments as the court below ought to have done, doth in the case of William A. Quarrier, trustee for Mrs. D. R. Laidley, v. The Peabody Insurance Company, set aside the finding of the court on the trial of the issues joined, and doth award a new trial of the issues, the costs of the former trial to abide this final result of the case. And in the case of William A. Quarrier, trustee for Mrs. D. R. Laidley, v. The Ætna Fire and Marine Insurance Company, of Wheeling, the Court doth set aside the demurrer to evidence and the verdict of the jury, and doth award a new trial of the case, the costs of the former trial to abide the final result of the case, and both of the cases are remanded to the circuit court of Kanawha, with directions to grant to the plaintiffs in each of these cases leave to amend the declarations and to be further proceeded with according to the principles laid down in this opinion, and further according to the principles and rules governing courts of common law.

JUDGMENTS REVERSED, and cases remanded.

*Margin:* 1877. January Term.

Quarrier, trustee, v. Peabody Insurance Company. And Quarrier, trustee, v. Ætna Fire and Marine Insurance Company