## PIMM v. WALDRON et al.

No. 16216—Opinion Filed Feb. 16, 1926.

Rehearing Denied May 11, 1926.

**1. Quieting Title—Pleading—Plaintiff's Title Pleaded Only in Reply Deemed Duly Controverted by Defendant.**

Where the plaintiff in an action to quiet title does not in his petition deraign his title, or set forth a copy of the instrument under or through which he claims title, but for the first time, and in his reply to the defendant's answer, sets forth his deed, such deed shall be deemed to be controverted by the adverse party as upon direct denial, verified by the affidavit of the party, his agent or attorney, without the filing of any pleading.

**2. Same—Tax Deed as Basis of Plaintiff's Title—Evidence by Defendant to Show Invalidity.**

Where the plaintiff in an action to quiet title to lands sets up in his reply, and not in his petition, a resale tax deed executed by the county treasurer, and under which he claims title, the defendant may, without further pleading, introduce testimony attacking the validity of such deed and all acts of the county treasurer prior to, and up to and including the execution of the deed, and the admission of such testimony is not error.

**3. Taxation—Resale for Delinquent Taxes—Invalidity of Deed — Insufficiency of Price Where Land not Vacant Lots.**

Where a county treasurer attempts to conduct a resale of real property under section 5, c. 158, Session Laws 1923, amending section 9745, Comp. St. 1921, and executes a deed therefor to the purchaser and the price paid by such purchaser is less than the amount of the taxes, penalties, interest, and costs due on each tract, said tract so attempted to be sold and conveyed not being vacant lots located in any city or town, such treasurer's deed is void and conveys no title, interest, or estate to the purchaser to such lands.

**4. Same—Balance of Taxes and Costs not Covered by Price Continues as Lien on Land.**

Where a county treasurer conducts a resale of real property under section 5, c. 158, Session Laws 1923, amending section 9745, Comp. St. 1921, and pursuant to such sale conveys such lands offered for sale to a purchaser for a sum less than the amount of the taxes, penalties, and costs due upon such tract of land, the same not being vacant lots located in any city or town, the county

treasurer is without authority to cancel the taxes, penalties, and costs due upon such tracts of land so attempted to be conveyed, and his acts attempting to cancel the same are wholly void, and the sums due remain and constitute a lien upon such lands, in the sum of the difference between the amount actually paid by such purchaser and the amount of taxes, penalties, interest and cost due and delinquent upon the lands at the time of the attempted conveyance.

(Syllabus by Ruth, C.)

Commissioner's Opinion, Division No. 3.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Mr. Pimm against H. E. Waldron and others. Judgment for defendant H. E. Waldron, and plaintiff appeals. Affirmed.

Twyford & Smith and Lee G. Mann, for plaintiff in error.

Lawrence Mills, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendant occupying the same relative position in this court as they did in the trial court, they will be referred to accordingly. Plaintiff brings his action against H. E. Waldron, M. S. Ryan, as county treasurer of Oklahoma county, and others, but none save defendant H. E. Waldron and M. S. Ryan are before this court in this appeal.

Plaintiff alleges he is the owner of certain lands in Oklahoma county and in the exclusive, adverse, complete, and undisturbed possession of the same. That the records in the county treasurer's office show certain charges against said real estate for delinquent ad valorem taxes and sales for ad valorem taxes to said county for the year of 1923 and prior thereto, but alleges "that all the said claims, charges, taxes, interests, and estates are without merit, unfounded, junior and inferior to the title and possession of plaintiff, and prays the county treasurer be required to cancel all ad valorem taxes for the year 1923 and prior thereto upon the records in his office and that title be quieted in plaintiff.

Defendant Waldron, by answer, denies generally and alleges ownership in himself. That he is in the actual possession of the land and has been for a period of more thna 13 years. That he purchased the lands from the South Oklahoma Townsite Company, on the 19th day of January, 1911; and sets up a purported copy of a deed from the Townsite Company to the defendant. Prior to filing his answer, defendant made application to the court for the appointment of a receiver, alleging he was owner and in possession, and

had been collecting $70 per month rent from his tenants until plaintiff, claiming to have bought the lands at a tax sale in 1924, notified the tenants to pay the rent to him, and as a result the tenants are not paying rent to either party.

Plaintiff's reply reiterates ownership and possession in him and alleges that the receiver appointed has not qualified or executed bond as required by the order of appointment and has not demanded of the plaintiff possession of the property pending this suit. Plaintiff claims title under a resale tax deed issued by the county treasurer, June 16, 1924, and recorded July 12, 1924, and attaches a copy of the deed, and alleges defendant is estopped from claiming title for the reason he has not tendered to plaintiff the amount of taxes canceled by the resale tax deed, and defendant has failed to pay the taxes on the land for more than ten years, and the amount due is $1,143.10 or more, "besides the sum of $67.78 sewer tax paid by plaintiff to the county treasurer as a further condition precedent to the issuance of the said resale tax deed." Plaintiff further alleges he has been compelled to expend $285 for the repair and preservation of the property.

The cause was tried to the court, and upon the conclusion of all the evidence the court found substantially as follows: (1) That defendant H. E. Waldron was the owner of the lands involved prior to the issuance of the tax deed to plaintiff. (2) That the taxes had not been paid thereon at the time of sale to plaintiff, and the amount due for taxes was $1,075.32. (3) That the county treasurer sold the lots to plaintiff for sum of 50 cents each, or a total of $2, plus $1.30 for treasurer's deed and 60 cents advertising fee, and that plaintiff further paid $67.78 as special sewer tax. (4) That plaintiff expended $285 for improvements on the property. (5) That plaintiff has collected $115 as rents from the property. (6) That at the time of the tax sale, and during all the time the taxes were due and delinquent, the lots were improved by having erected thereon seven four-room houses, and the taxes due were greatly in excess of the amount paid by the plaintiff for the lots. (7) The sale was not conducted according to law, in that the county treasurer sold the real estate to plaintiff for less than the full amount of the taxes due and delinquent. That in advertising the sale he did not separately state the amount of tax due and delinquent for each year subsequent to 1911. That the return of the sale was not in accordance with the requirements of the law, because it does not show the manner in which the sale was made, nor state the day to which

said sale was continued from day to day, nor state the day upon which the lots were sold. (8) That the tax sale and deed are void and conveyed no interest to plaintiff because of the treasurer's failure to separately advertise the several items of delinquent taxes as aforesaid, because of the bid being less than the full amount of the tax due and because of the insufficiency of the treasurer's return made after the sale. (9) That the said tax deed is not in the form prescribed and approved by the State Examiner and Inspector. (10) That the taxes for which said property was sold at the resale were not paid and discharged by such sale and are now subsisting liens against said property, and the cancellation of said tax upon the county treasurer's office records was null and void and did not extinguish said taxes.

The court thereupon declared the tax sale proceedings null and void and ordered the cancellation of plaintiff's deed and the tax proceedings, and further ordered the indorsement of payment of the delinquent taxes upon the books of the county treasurer canceled and expunged and declared to be of no force and effect, and the court rendered judgment against the defendant and in favor of the plaintiff for the sums paid out by plaintiff, to which reference has heretofore been made. From the judgment of the court, the plaintiff appealed and brings this case here for review upon petition in error and case-made, and sets forth seven assignments of error, which he presents under four "propositions." First:

"The court erred in permitting defendant to introduce evidence as to defects in plaintiff's deed and treasurer's acts leading up to the issuance thereof, because no defects were specifically pleaded as required by law."

In plaintiff's petition no reference was made to any tax deed; title was not deraigned; the plaintiff simply alleged he was the owner of the lots, and did not advise defendant how plaintiff claimed to have acquired title, and it is obvious defendant could not, in his answer, attack a deed that was not even remotely referred to in the petition. Defendant, in his answer, alleges he acquired title to the lots on January 19, 1911, by warranty deed from the South Oklahoma Townsite Company, paying $3,100 cash therefor, and attaches a copy of such deed and makes it a part of his answer. Plaintiff filed his unverified reply, in which he denies defendant is the owner of the lots and alleges the alleged right, title, and interest of defendant has been extinguished by the paramount title of plaintiff acquired under and by virtue of one certain resale tax deed issued by the county treasurer on June 16, 1924, etc., and attaches a copy of such deed. This is the first mention of the resale tax deed.

Chapter 3, art. 7 C. O. S. 1921, under head of "Pleadings," in section 264 thereof, provides as follows:

"Title of Pleadings. The only pleadings allowed are: First. The petition by the plaintiff. Second: The answer or demurrer by the defendant. Third: The demurrer or reply by the plaintiff. Fourth: The demurrer by the defendant to the reply of the plaintiff."

This section of the statute was adopted from the state of Kansas, and in Continental Insurance Co. v. Pearce, 39 Kan. 396, the Supreme Court of Kansas in construing this section said:

"The allegations of any appointment or authority, appearing as new matter in a reply, shall be deemed to be controverted by the adverse party as upon direct denial, verified by the affidavit of the party, his agent or attorney without the filing of any pleading."

We are therefore of the opinion, and so held, that under the state of the pleadings the court did not commit error in admitting evidence as to defects in plaintiff's deed and the treasurer's acts leading up to the issuance of the same.

It is uncontroverted that plaintiff paid the county treasurer the sum of $2 for the four lots with seven four-room houses thereon, plus $1.30 for treasurer's deed, sixty cents advertising fees, and $67.78 special sewer tax, or a total of $71, and the sum of the taxes due on the property at the time of the attempted resale and conveyance was $1,075.32, and these taxes the county treasurer attempted to cancel upon his records at the time of the execution of the tax resale deed.

Chapter 158, Sess. Laws of Oklahoma 1923, p. 258, is an act relating to the resale of real estate for delinquent taxes. The act carried the emergency clause and was approved April 9, 1923, and was in full force and effect on June 16, 1924, the date of the execution of the resale tax deed from the county treasurer to this plaintiff. Section 5 of the act of April 9, 1923, provides as follows:

"That section 9745, Compiled Oklahoma Statutes Annotated 1921, be and the same is hereby amended to read as follows: 'On the day said real estate is advertised for resale the county treasurer shall offer same for sale at his office between the hours of nine

o'clock a. m. and four o'clock p. m., and continue said sale thereafter from day to day between the same hours until all of said real estate is sold. Said real estate must be sold at public auction to the highest bidder for cash, provided such bidder offers or bids an amount equal to or greater that the amount of taxes, penalties, interest, and costs due on each tract of land; provided, further, that any such bid for vacant lots located in any city or town may be accepted as the highest and best bid, whether said amount is equal to or greater than the amount of taxes, penalties, interest and costs due thereon."

The portion of the statute quoted from is certainly plain and unambiguous. The lots sold were not vacant lots, but were improved by having erected thereon seven four-room houses, and though the amount of the taxes due was $1,075.32, the treasurer attempted to "knock them down" or sell and convey them to plaintiff for the sum of $2. The county treasurer derives his authority to conduct a resale and transfer property solely from the statute, and the provisions of the statute must be followed strictly, and his signature to the deed was of no force and effect, and the deed was and is absolutely void and conveyed no title or interest in the lots to the plaintiff, and his attempted cancellation of all taxes due and delinquent from 1911 to the date of sale was a void act and of no force and effect, and the court did not commit error in so holding. There is but one method supplied by the statute for the conveyance of improved real estate by the county treasurer and its sale for less than the amount of taxes due and delinquent and the cancellation of all back taxes.

Section 5, Sess. Laws 1923, supra, further provides:

"In case no bidder offers or bids the amount due upon any tract of real estate other than the lots located in any city or town, as above provided and offered for sale (vacant lots) the county treasurer shall bid off the same in the name of the county for the amount of taxes, penalties, interest and cost due thereon, and shall issue a deed therefor in the name of the chairman of the board of county commissioners and his successors in office for the use and benefit of the county and thereafter said property shall be exempt from assessment for ad valorem taxes so long as the title is held for the county."

It therefore became the plain duty of the county treasurer to reject the $2 bid of plaintiff and to bid off the same for the county and execute his deed to the chairman of the board of county commissioners as provided by statute, and the treasurer had no more authority to convey this property to

plaintiff under the facts in this case, than he would have had to convey the court house itself.

Section 5, Laws 1923, supra, further provides:

"Any property acquired by the county under the provisions of this section may be sold by the treasurer, at such price as may after notice by publication be approved by the board of county commissioners.

"Said notice of publication shall be given by the treasurer in the official county paper and shall embrace a description of the property, the price and to whom proposed to be sold, and stating that he will on a given date to be stated in the notice, apply to the board of county commissioners for its approval of said sale, and for an order directing that deed for said property be executed by the chairman of said board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county."

This latter course the treasurer did not attempt to pursue, but attempted to convey direct to plaintiff at the resale and for an insignificant sum, much less than the amount of taxes due, and then attempted to cancel taxes thereon in a sum approximating $1,000. This the county treasurer was without authority to do, and the deed given to plaintiff conveyed no interest in the lands and was absolutely void.

We deem it unnecessary to consider the other assignments of error urged by plaintiff, and for the reasons herein stated, the judgment of the trial court in all matters should be, and is hereby affirmed.

By the Court: It is so ordered.